ALFRED THOMPSON *v.* STATE OF MARYLAND

[No. 23, September Term, 1978.]

*Decided December 4, 1978.*

114

Robert R. Michael, Assigned Public Defender, for appellant.

Diane G. Goldsmith, Assistant Attorney General, with whom were Francis B. Burch, Attorney General, and Clarence W. Sharp, Assistant Attorney General, on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

On 6 October 1977, in the District Court of Maryland, in Montgomery County, Alfred Thompson was convicted of shoplifting and two charges of assault and battery. Sentence was imposed on 13 December, and Thompson appealed to the Circuit Court for Montgomery County. He was released pending the de novo trial on appeal upon posting bond furnished by a corporate surety in the amount of $7500. At a court trial on 26 April 1978, in the Circuit Court for Montgomery County, Mitchell, J. presiding, he was again convicted of the charges. We granted his petition for the issuance of a writ of certiorari. We limited review to three questions. The issue posed by the second question, "[d]id the trial court err in not fully complying with the mandate of Rule 723 of the Maryland Rules of Procedure by not properly advising ... Thompson of his rights and obligations as contained therein?", is dispositive.[1] We find that the trial

---

1. The other questions were: "(1) [d]id the trial court err in holding that ... Thompson had impliedly waived his constitutional right to counsel when [he] appeared for trial without an attorney and objected to proceeding to trial without legal representation?" and "(3) [d]id the trial court err in not fully complying with the mandate of Rule 735 c of the Maryland Rules of Procedure when the court permitted ... Thompson to be tried by the court instead of a jury?"

court committed reversible error in not complying with the mandate of Rule 723. We reverse the judgments and remand the case for a new trial.

## I

Five hearings were held by the Circuit Court for Montgomery County in its attempts to get the case to trial. The docket entries read in relevant part:

1) "2/10/78 Preliminary Inquiry Hearing (Fairbanks, J.) To have Attorney Hearing Set February 17, 1978. Trial date set March 22, 1978."

2) "2/17/78 Court (Fairbanks, J.) continues hearing as to rule 723 to February 24, 1978."

3) "2/24/78 Hearing pursuant to Rule 723 (Fairbanks, J.). Defendant appeared without attorney. Court advises defendant that he will proceed without counsel at trial, if he has not obtained one; continued on bond."

4) "3/22/78 State's oral Motion for Continuance (Fairbanks, J.) granted to April 19, 1978."

5) "4/19/78 Case called in open Court, (Shure, J.). Defendant failed to appear. Court orders a Bench Warrant issued forthwith and issued. . . .

"4/19/78 Court countermands Bench Warrant and continues case to April 26, 1978. Defendant has been advised under Rule 723 and will go to trial with or without attorney, per Judge Shure — no clerk present."

We give the substance of what occurred at the hearings as reflected in the transcripts of the proceedings.

*The Hearing of 10 February 1978*

Assistant State's Attorney Ann S. Harrington was present and J. James McKenna was noted as "Attorney for the Defendant." McKenna, Public Defender, addressed the court:

"Mr. Thompson was represented at the District Court level through our office by Douglas Adams. In his final report to me on January — which I received on January 4, Mr. Adams had written the following: 'The Defendant noted an appeal on his own behalf to the Circuit Court. He has been advised to file the $40 fee or file a Petition in forma pauperis.[2] He has been released on $7,500 total appeal bond. He has been advised to retain counsel or visit the Public Defender for representation on appeal.'

"I don't know whether he's retained counsel, but I know that he hasn't come to our office."

The court queried Thompson:

"THE COURT: What do you propose to do about getting a lawyer, Mr. Thompson?

THE DEFENDANT: I am waiting for the Court to —

THE COURT: Pardon?

THE DEFENDANT: I would like the Court to appoint me one.

THE COURT: That isn't the way it operates. If you will go with this gentleman over here who is about to stand up, he will interview you and find out whether you are eligible for an appointment. I would assume you are, but —

MR. McKENNA: He probably is.

THE COURT: —but I think you ought to be interviewed, so if you will go with that gentleman,

---

2. The receipt for the transcript of the record from the District Court to the Circuit Court for Montgomery County states that $40 "Advance Circuit Court Costs" were forwarded.

we will take care of it as soon as you have been interviewed."

McKenna reported the results of the interview. He told the court, in effect, that Thompson was not sure he wanted to be represented by the Public Defender. "Technically, I suppose, he is eligible though he did post the $750 [for the surety bond] himself though he doesn't seem to have any income." Thompson interposed: "He told me if I had somebody to post the money out on bond, I should get my own lawyer.... I will try to get my own lawyer." He iterated that he wanted to get his own lawyer. The court set trial for 22 March, rejecting suggestions for an earlier trial date in order to give Thompson a fair opportunity to obtain counsel. The court made sure that Thompson understood:

"THE COURT: ... Your case will be tried on March 22nd. You advise the Court you are going to get your own lawyer; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: All right, now, I want you back in here next week, one week from today, to tell me that you have got a lawyer and bring him with you.

THE DEFENDANT: Yes, sir.

THE COURT: All right, or have someone enter an appearance on your behalf so this matter will be continued to next week, and a trial will be set for March 22nd....

Now, remember, I want either you or your lawyer back here next Friday.

THE DEFENDANT: Yes, sir."

*The Hearing of 17 February 1978*

Assistant State's Attorney Stephen J. Savage was present. Thompson told the court that "Mr. Wood" was his lawyer, that Wood was going to represent him and that he had retained Wood "[a] couple of days ago. ...." Wood was not then present, being before another judge. The court pursued the subject: "Has he agreed to represent you, or do you still

have to work out your fee?" Thompson answered: "Yes, sir."
The court pressed him: "He hasn't agreed to represent you,
has he?" Thompson replied: "He told me he would stand in
this morning, you know."

Upon request of the court Thompson found Wood and
returned with him. It developed that Wood did not know
whether he would represent Thompson. The court observed
that there was a March 22nd trial date, and that "you are
going to have to fish or cut bait." Wood promised to advise
the court if he was not going to enter an appearance.

### The Hearing of 24 February 1978

Assistant State's Attorney Michael Mason and Public
Defender McKenna were present. The court informed
Thompson that it had received a message that Wood was not
representing him, and asked what he was doing about getting
a lawyer. Thompson replied: "At the present time I would like
the Court to appoint one." The court looked to McKenna, who
said:

> "We have spoken with him on at least one prior
> occasion, if Your Honor please, and determined that
> he is not qualified. I spoke with Mr. Thompson
> before we came in here this morning, and I indicated
> that although he would like the services of my office,
> I told him that I was going to turn him down again,
> and that I simply would leave it up to the Court as
> to whether or not the Court wanted to order me to
> appoint a lawyer on his behalf."

The judge took the position that if the Public Defender did
not think Thompson was eligible to be represented "I
certainly don't. . . . I am not going to order you to do any —
that is your job; you are the Public Defender." McKenna
indicated that several other judges had no hesitation in
ordering the Public Defender to afford representation. The
judge's reaction was: "I have a lot of hesitation. You are
getting paid for being the Public Defender and I get paid for

being a judge, and you tell me he is not eligible and that is good enough for me." The court addressed Thompson:

"You better get yourself a lawyer. You are coming up for trial on the 22nd of March, and if you walk in here on the 22nd of March without a lawyer, you are going to get tried, and you better get yourself one, do you understand?"

The Assistant State's Attorney attempted to raise a storm signal:

"MR. MASON: Has the Court ever advised him of 723?

THE COURT: I know, he says he is going to again. I am leaving it just like that. If it causes you a problem at the time of trial, I suggest you get the rule changed.

MR. MASON: Thank you.

(Thereupon, the matter was concluded)"

*The Hearing of 22 March 1978*

This was the day set for trial. Assistant State's Attorney David C. Driscoll, Jr. represented the State. The clerk declared that "Mr. Adams is entered here for the defendant." In response to an inquiry by the court, Thompson explained that Adams was his court-appointed lawyer in the District Court. The court discovered that Adams' appearance was not entered of record in the circuit court so that an order on his motion to withdraw was unsigned as not needed. Adams had never been in the case on appeal. The court reminded Thompson that it had told him to get a lawyer. Thompson said he remembered. The court asked Thompson if he were going to trial without one. Thompson said: "Yes, sir," and, upon questioning, stated that he wanted a non-jury trial. At this point, the State requested a continuance because a "critical witness" was missing. Trial was set for 19 April. The court turned to Thompson:

"Go get yourself a lawyer. Don't come in here and tell me Mr. Adams is your lawyer because he is not.

> You come in here. You got two more weeks. Boy, you're just getting lucky. You won't be lucky the next time. You come in here with a lawyer, you understand, in two weeks."

The clerk observed that the trial date was 19 April. The court said:

> "So that is four weeks from today, April 19, and if you don't show up there will be a bench warrant for you. You better be here and be here with a lawyer."

Whereupon, the hearing was concluded.

*The Hearing of 19 April 1978*

The case was called for trial before Shure, J. The prosecutor was Assistant State's Attorney Robert L. Dean. Thompson was not present. Dean addressed the court:

> "Alfred Thompson appeared before Judge Fairbanks several weeks ago. Judge Fairbanks advised him that there would be a trial with or without an attorney. It's on appeal from the District Court conviction where he was represented by the Public Defender's Office.
>
> The amount of bond that he made indicated to the Public Defender's Office that he really wasn't as indigent as expected, whereas as he represented. The information received this morning by the Assignment Office was that he was in the hospital and he was due to be released today. The State's witnesses are present in court. The State's witnesses are employees of Giant of Maryland, Incorporated. I know that some of the witnesses are getting new employment. Further delays in this matter will make the obtaining of the witnesses more difficult, and I'm going to request, at least, that a bench warrant be issued for this gentleman, and, perhaps, even a forthwith body attachment to get him before the Court.

He was advised very sternly by Judge Fairbanks that the matter would be tried today, Your Honor."

The court ordered the issuance of a bench warrant. Later that day Dean reported to the court that Thompson had been "calling the Circuit Court all day. . . ." Dean finally talked to him and "he seemed to have a credible reason for not being here, although he's not represented by an attorney. . . ." On behalf of Thompson, Dean asked for a continuance for one week, at which time "we are ready to proceed to trial pro se. It will be a bench trial." The court was concerned about compliance with Rule 723:

"THE COURT: Has he been notified or advised under —"

"MR. DEAN: Judge Fairbanks advised him under the appropriate section as to his right to an attorney, as to his waiver of attorney, and he asked me to ask you —

THE COURT: Rule 723?

MR. DEAN: He was advised, and I was present in the court when that occurred.

He asked me to ask you if he would appoint a Public Defender for him, but I told him that he knows very well that the Public Defender will not represent him, it's clear from the record, and he said he would be out here on Wednesday."

The case was continued until 26 April.

*The Trial*

When the case was called for trial on 26 April, before Mitchell, J., with Driscoll as the prosecutor, there was a colloquy between the court and Thompson:

"THE COURT: Mr. Thompson, as I understand it, you have elected to represent yourself, Is that correct?

THE DEFENDANT: No, sir.

THE COURT: It isn't?

122

Were you in front of Judge Shure last week, April the 19th?

THE DEFENDANT: No, sir.

THE COURT: There's a docket entry in here that the case was called on the 19th, and you failed to appear and a bench warrant was issued, and then Judge Shure countermanded the bench warrant and continued the case for a week. The docket further advises that you were advised under Rule 723 that you would go to trial with or without an attorney. Is that correct?

THE DEFENDANT: Yes, sir."

The court elicited from Thompson that he preferred "a judge trial," a decision he was "making on [his] own" without anyone threatening him or in any way persuading him. Trial proceeded to verdict and sentence.

## II

The late Judge Levine, speaking for this Court in *State v. Renshaw,* 276 Md. 259, 347 A. 2d 219 (1975), neatly summed up the rights of an accused to assistance of counsel:

"The Sixth Amendment to the United States Constitution provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.' The Due Process Clause of the Fourteenth Amendment guarantees the same right to the assistance of counsel, including the right to the appointment of counsel in the case of the indigent defendant, in state criminal prosecutions. . . .

"Central to the cases dealing with the right to counsel is the recognition that the assistance of a lawyer is essential to assure a fair trial. . . .

* * *

"Consequently, because '[e]ssential fairness is lacking if an accused cannot put his case effectively

in court,' ... and because it is unlikely that an accused will be able to present his case effectively without the assistance of counsel, a conviction cannot be allowed to stand where the accused is not represented at trial by counsel unless it be determined that there was an intelligent and competent waiver by the accused. ... To assure protection of so fundamental a right, courts indulge every reasonable presumption against waiver, ... and do not permit waiver to be presumed from a silent record, .... It must appear affirmatively on the record that the accused was offered counsel but intelligently and understandingly rejected the offer." *Id.* at 264-266 (citations omitted).

Rule 723 implements the constitutional mandates; its requirements are mandatory.[3]

## (1)

Section a of Rule 723 requires a defendant to appear in court at the time and place specified in the summons or other writ when a charging document is filed against him. See Rule 720. Section b of Rule 723 concerns a defendant appearing in court pursuant to § a without counsel. Upon such appearance the court shall:

"1. Make certain that the defendant has received or receives a copy of the charging document;

2. Advise the defendant that he has a right to be represented by counsel at every stage of the proceedings;

3. Advise the defendant of the matters required by subsections 1, 2 and 3 of section c of this Rule [*see infra*];

---

3. Rule 723 was approved and adopted, effective 1 July 1977, by the Order of this Court dated 31 January 1977 as part of the revision of Chapter 700 of the Maryland Rules of Procedure. Former Rule 719, and its precursor Rule 723, included less elaborate provisions for the appointment and waiver of counsel. We had held, with respect to those former rules, that their requirements were mandatory. Manning v. State, 237 Md. 349, 353, 206 A. 2d 563 (1965); Taylor v. State, 230 Md. 1, 2, 185 A. 2d 197 (1962); Williams v. State, 220 Md. 180, 181, 151 A. 2d 721 (1959); Hill v. State, 218 Md. 120, 127, 145 A. 2d 445 (1958).

4. Advise the defendant who desires counsel that he must retain the services of counsel and have counsel enter an appearance for him within 15 days;

5. Advise the defendant that if he finds he is financially unable to retain the service of private counsel, he should apply to the Public Defender as soon as possible for a determination of his eligibility to have counsel provided for him by the Public Defender;

6. Advise the defendant that if the Public Defender declines to provide representation, the defendant should immediately notify the clerk of the court so that the court can determine whether it should appoint counsel pursuant to Article 27A, section 6 (f), of the Maryland Code;

7. Advise the defendant that if counsel does not enter an appearance within 15 days, a plea of not guilty will be entered pursuant to section b 3 of Rule 731 (Pleas), and the defendant's case will be scheduled for trial. The court shall also advise the defendant that if he appears for trial without counsel, the court could determine that he has waived his right to counsel by neglecting or refusing to retain counsel or to make timely application to the Public Defender for counsel, and in that event, the case would proceed with defendant unrepresented by counsel."

It is readily apparent from the transcripts of the proceedings that there was no actual compliance with subsections 2, 3, 4 and 7 of § b at the hearings on 10, 17, 24 February and 22 March 1978 with Fairbanks, J. presiding.[4] The docket entry of 24 February 1978 that there was a "[h]earing pursuant to Rule 723" was simply incorrect. At the hearing of 19 April 1978, Shure, J., appearing in the case for the first time, inquired about compliance with Rule 723.

4. There was apparent compliance with subsections 5 and 6 of Rule 723 b at the hearing on 10 February 1978 by reason of the interview with the Public Defender and the communication to the court that Thompson would get his own lawyer.

Assistant State's Attorney Dean was mistaken when he told the court that Judge Fairbanks had *advised* Thompson "under the appropriate section [of Rule 723] as to his right to an attorney, as to his waiver of attorney. . . ." If Dean were present when that occurred, as he stated, it is not shown by the record before us; Dean's presence is not noted at any prior hearing. All of this misinformation was compounded before the trial judge, Mitchell, J., the third judge appearing in the case. He relied on the incorrect docket entry that there had been a hearing pursuant to Rule 723, and apparently proceeded on the basis that Thompson desired "to waive counsel . . . by neglecting or refusing to obtain counsel." Rule 723 d 2.

The failure to comply with the requirements of Rule 723 b constituted reversible error.

### (2)

Section c of Rule 723 requires an inquiry to be made when a defendant indicates that he does not want representation:

"When a defendant indicates a desire or inclination to waive counsel, the court may not accept the waiver until it determines, after appropriate questioning on the record in open court, that the defendant possesses the intelligence and capacity to appreciate the consequences of his decision, and fully comprehends:

1. The nature of the charges against him, any lesser included offenses, and the range of allowable penalties, including mandatory and minimum penalties, if any;

2. That counsel can render important assistance to him in determining whether there may be defenses to the charges or circumstances in mitigation thereof, and in preparing for and representing him at trial;

3. That even if the defendant intends to plead guilty, counsel may be of substantial assistance in

developing and presenting information which could affect the sentence or other disposition;

4. That if the defendant is found to be financially unable to retain private counsel, the Public Defender or the court would, if the defendant wishes, provide counsel to represent him."

The inquiry required to be made and the test to be met under § c before the court may accept a waiver of counsel applies not only to a defendant's appearance pursuant to § a but also *to any proceeding at which he appears without counsel thereafter.* In such event, the court is prohibited from proceeding before determining whether the defendant *at that time* desires to waive counsel or has waived counsel. § d 2.[5] By § e, there must be a record of compliance with respect to §§ b, c and d.[6]

Assuming, for the purpose of decision, that Thompson had been sufficiently advised under § b and that he indicated a desire or inclination to waive counsel after his appearance pursuant to § a, the record does not show, as required by § e, that there was a waiver inquiry as mandated by § c. The court was, therefore, precluded from accepting a waiver until it determined, after appropriate questioning on the record in open court, that Thompson possessed the intelligence and capacity to appreciate the consequences of proceeding without counsel and fully comprehended the matters specified in § c 1-4. Absent the acceptance of an effective waiver, the court was prohibited from proceeding. § d 2. Reversible error was committed by proceeding to trial in the circumstances. *See State v. Renshaw, supra.*

---

5. "If the defendant appears in court without counsel, at any proceeding after his appearance pursuant to section a of this Rule, the court may not proceed before determining whether the defendant at that time desires to waive counsel, or has waived counsel, either affirmatively or by neglecting or refusing to obtain counsel." Rule 723, § d 2.

"If the court accepts the waiver of counsel pursuant to section c of . . . Rule [723], it shall direct that a trial date be scheduled." § d 1.

6. "The advice of the court given pursuant to section b and c of this Rule and the finding that the defendant waived counsel pursuant to sections c and d of this Rule shall be made on the record in open court. The docket entries shall affirmatively show compliance with this Rule." Rule 723, § e.

## III

If Thompson were indigent, it was the duty of the Public Defender to provide legal representation for him. He was charged in a criminal proceeding with a serious crime,[7] under the laws of this State, before a circuit court. Md. Code (1957, 1976 Repl. Vol.) art. 27A, § 4 (b) (2). With respect to the duty of the Public Defender to provide legal representation, " '[i]ndigent' means any person taken into custody or charged with a serious crime as herein defined under the laws of the State of Maryland or the laws and ordinances of any county, municipality, or Baltimore City, who under oath or affirmation subscribes and states in writing that he is financially unable, without undue hardship, to provide for the full payment of an attorney and all other necessary expenses of legal representation." Code, art. 27A, § 2 (f). The Public Defender then determines such person's eligibility for his services as prescribed by art. 27A, § 7 (a) and (b). *See* note 9 *infra.*

At the proceeding on 10 February 1978, Thompson was afforded an interview with the Public Defender. The result of the interview, as reported by the Public Defender to the court, was that Thompson was "technically" eligible. However, the Public Defender called attention to the fact that Thompson had posted $750 for the surety bond "though he does not seem to have any income." Thompson's statement that he would try to get his own lawyer was due to the Public Defender's assertion that he should get his own lawyer because he "had somebody to post money out on bond. . . ." At the hearing on 24 February, when it appeared that the

---

7. " 'Serious crime' means:

    (1) A felony;

    (2) A misdemeanor or offense, the penalty for which involves the possibility of confinement for more than three months or a fine of more than $500, or any other offense where, in the opinion of the court, either the complexity of the matter, or the youth, inexperience, or mental capacity of the accused, may require representation of the accused by an attorney; and

    (3) An act which except for the age of the person involved, would otherwise be a serious crime." Md. Code (1957, 1976 Repl. Vol.) art. 27A, § 2 (h).

attorney Thompson sought would not represent him, Thompson asked the court to appoint counsel. The Public Defender told the court that when he had talked to Thompson before, apparently during the course of the 10 February hearing, it was determined that he was not "qualified" for representation, and that he had told Thompson that morning that he "was going to turn him down again." The Public Defender wanted to leave it up to the court, making clear that if the court so ordered he would provide representation. The court refused to so order, properly we believe, on the ground that the question whether the Public Defender represented a particular defendant was for the Public Defender and not for the court.[8] The court erred, however, in not determining whether to appoint counsel under Code, art. 27A, § 6 (f). The statute provides:

"Nothing in this article shall be construed to deprive [a circuit court] of its authority to appoint an attorney to represent an indigent person . . . where the Office of the Public Defender declines to provide representation to an indigent person entitled to representation under this article."

When a defendant appears pursuant to § a of Rule 723, § b 6 requires the court to [a]dvise the defendant that if the Public Defender declines to provide representation, the defendant should immediately notify the clerk of the court *so that the court can determine whether it should appoint counsel pursuant to Article 27A, section 6 (f), of the Maryland*

---

8. Art. 27A of the Md. Code (1957, 1976 Repl. Vol.) establishes the Office of Public Defender with a Public Defender at its head, and sets out his authority, duties and obligations upon a declaration and legislative intent spelled out in § 1:

"It is hereby declared to be the policy of the State of Maryland to provide for the realization of the constitutional guarantees of counsel in the representation of indigents, including related necessary services and facilities, in criminal and juvenile proceedings within the State, and to assure effective assistance and continuity of counsel to indigent accused taken into custody and indigent defendants in criminal and juvenile proceedings before the courts of the State of Maryland, and to authorize the Office of Public Defender to administer and assure enforcement of the provisions of this article in accordance with its terms."

*Code."* (Emphasis added). The waiver inquiry which § c of Rule 723 mandates must assure that the defendant "fully comprehends" that if he "is found financially unable to retain private counsel, the Public Defender or the court would, if the defendant wishes, provide counsel to represent him." Thus, there is the clear duty imposed on the court, in order to decide whether it should appoint counsel, upon the Public Defender declining to do so, to make its own independent determination whether a defendant is indigent and otherwise eligible to have counsel provided. It could not properly fulfill this duty without considering facts material and relevant to the issue.

The record before us does not show what investigation was made by the Office of the Public Defender and all that was considered by it with respect to Thompson's eligibility *vel non.*[9] It seems, however, that the primary reason for declining to represent him was that a surety bond had been posted for him. As we have seen, the Public Defender raised this specter at the first hearing on 10 February 1978 when he mentioned the bond after stating that Thompson was "technically" eligible for the services of the Public Defender. Whereupon, Thompson flatly declared that the

---

**9.** Md. Code (1957, 1976 Repl. Vol.) art. 27A, § 7 provides, in relevant part:

"(a) Eligibility for the services of the Office of the Public Defender shall be determined on the basis of the need of the person seeking legal representation. Need shall be measured according to the financial ability of the person to engage and compensate competent private counsel and to provide all other necessary expenses of representation. Such ability shall be recognized to be a variable depending on the nature, extent and liquidity of assets; the disposable net income of the defendant; the nature of the offense; the effort and skill required to gather pertinent information; the length and complexity of the proceedings; and any other foreseeable expenses.

\* \* \*

"(b) The Office of the Public Defender shall make such investigation of the financial status of each defendant at such time or times as the circumstances shall warrant, and in connection therewith the office shall have the authority to require a defendant to execute and deliver such written requests or authorizations as may be necessary under applicable law to provide the office with access to records of public or private sources, otherwise confidential, as may be needed to evaluate eligibility. The office is authorized to obtain information from any public record office of the State or of any subdivision or agency thereof upon request and without payment of any fees ordinarily required by law."

Public Defender had told him that "if I had somebody to post the money out on bond, I should get my own lawyer. That's what he told me." The judge then presiding expressly did not dispute that the Public Defender had so stated. Assistant State's Attorney Dean represented to the court at the hearing on 19 April that "[t]he amount of the bond that [Thompson] made indicated to the Public Defender's Office that he wasn't really as indigent as expected, whereas he represented." The judge originally in the case was completely content with the Public Defender's conclusion, whatever it may have been based upon, that Thompson was not entitled to have representation provided — "you tell me he is not eligible and that is good enough for me." This view governed the court's action in the face of an utter lack of the data contemplated by art. 27A, § 7, the absence of any expression by the Office of the Public Defender of the reasons why it declined to provide representation, and the fact that the Public Defender had represented Thompson in the District Court.[10] The judge made no attempt to determine whether the refusal of the Office of the Public Defender to provide representation was despite Thompson's eligibility to have counsel provided. Neither judge thereafter involved in the case took any steps to determine whether Thompson was in fact an indigent person entitled to representation. The court was obligated to make that determination in the circumstances. As we have indicated, if Thompson were indigent and otherwise entitled to assistance of counsel, the law, implemented by statute and our rules of procedure, required the court to appoint an attorney when the Office of the Public Defender declined to provide counsel. The failure of the court to determine whether Thompson was eligible to have counsel provided was reversible error.

## IV

Within the frame of reference of Rule 723, the errors of the Circuit Court for Montgomery County were threefold, and any one of them compels reversal. The court erred in not

---

10. Thompson is represented by a Public Defender before us.

advising Thompson pursuant to § b, in not conducting the waiver inquiry required by § c, and in not making a determination upon proper considerations whether Thompson was eligible to have it appoint counsel upon the refusal of the Public Defender to provide representation. We reverse the judgments and remand the case for a new trial upon due compliance with Rule 723.[11]

> *Judgments reversed; case remanded*
> *for a new trial; costs to be paid by*
> *Montgomery County.*

---

11. Nothing we have said in this opinion is to be construed as indicating whether or not Thompson is eligible to have counsel provided to represent him either by the Public Defender or by the court.