993 A.2d 94

Evelyn Susan WORKMAN

v.

STATE of Maryland.

No. 2, Sept. Term, 2009.

Court of Appeals of Maryland.

April 16, 2010.

Anne K. Olesen, Assigned Public Defender, (George Washington University Community Law Clinics, of Washington, D.C.) on brief for petitioner.

Diane E. Keller, Assistant Attorney General (Douglas F. Gansler, Attorney General of Maryland, of Baltimore, MD) on brief for respondent.

Argued before BELL, C.J., and HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

HARRELL, J.

Ostensibly in order to protect the defendant's constitutional right to appointed counsel, the Circuit Court for Cecil County dismissed the then-pending criminal charges against Evelyn Susan Workman ("Workman"), to whom representation had been denied previously by the local Office of the Public Defender ("OPD"), but who, upon independent review by the

Circuit Court, qualified as indigent and eligible for representation at public expense. Although it determined that Workman was eligible for the appointment of counsel at public expense, the Circuit Court was persuaded that dismissal of the charges against Workman was required constitutionally because, according to the court, it had no other alternatives through which it could secure counsel for Workman—the local OPD denied representation to Workman; the county government avowed a financial inability to compensate court-appointed attorneys; the local bar was unwilling to represent criminal defendants on a pro bono basis; and the prosecutor refused to seek a writ of mandamus to require the local OPD to supply counsel. Finding the Circuit Court's decision to dismiss the charges against Workman to be an inappropriate judicial response to the situation confronting it, the Court of Special Appeals reversed. Because we shall hold that, once it determined that the local OPD denied improperly representation to Workman, the Circuit Court possessed the authority to appoint the local OPD as counsel for Workman, we agree with the judgment of the Court of Special Appeals, albeit on different grounds, that the Circuit Court erred by ordering dismissal of the underlying criminal charges.

## *FACTS*

Workman was arrested and charged in the District Court of Maryland, sitting in Cecil County, with possession of marijuana, driving under the influence, and other vehicle-related offenses. Upon Workman's prayer for a jury trial, the case was transferred to the Circuit Court.

During a status conference and scheduling hearing held on 18 December 2006, Workman informed the Circuit Court that she was not represented by counsel and that she was unable to afford privately-retained counsel. She advised the court that relatively recently she applied for representation by the local OPD in a separate case, Case No. K–03–129, but that she was informed, by letter dated 13 January 2006, that the local OPD determined that she failed to meet the requirements for its

services because her income [1] exceeded 110% of the Federal Poverty Guidelines,[2] the limit to qualify for representation by the OPD according to COMAR 14.06.03.05A [3] and D(2).[4]

---

**1.** The record does not contain official documents from the local OPD regarding its specific calculation of Workman's income for the purpose of determining her eligibility for legal representation. The record, however, does contain an informal, handwritten note, attached to the local OPD's 13 January 2006 letter to Workman denying eligibility for representation, which states:

> "6/16/05—denied—$995/mth w/ family of 1 making her non eligible
> 1/13/06—$1036 denied
> see above."

**2.** In 2006, when the local OPD considered Workman's application for representation, the Federal Poverty Guideline for a single individual was $9,800.

**3.** COMAR 14.06.03.05A, entitled "Determination of Eligibility for Services," provides:

> Pursuant to Article 27A, § 7, Annotated Code of Maryland, eligibility for services of the Office of the Public Defender shall be determined on the basis of need of the individual seeking legal representation. Need may be measured according to the applicant's maximum annual net income level and asset ceiling. In cases where good cause is shown, need may be measured by the financial ability of the applicant to engage and compensate competent private counsel and to provide all other necessary expenses of representation. This ability shall be recognized to be a variable depending on:
> (1) The nature, extent, and liquidity of assets;
> (2) The disposable net income of the defendant;
> (3) The nature of the offense;
> (4) The effort and skill required to gather pertinent information;
> (5) The length and complexity of the proceedings; and
> (6) Any other foreseeable expenses.
>
> COMAR 14.06.03.05A (2006).

**4.** COMAR 14.06.03.05D, entitled "Maximum Income Level," provides:

> (1) Except as provided in § D(3) of this regulation, the maximum net annual income level for persons accepted for representation in District Court cases, violation of probation, and contempt proceedings may not exceed 100 percent of the current official federal poverty income guidelines as found in § 673(2) of OBRA–1981 (42 U.S.C. § 9902(2)).
> (2) Except as provided in § D(3) of this regulation, the maximum net annual income level for persons accepted for representation in all other cases may not exceed 110 percent of the current official federal poverty income guidelines as found in § 673(2) of OBRA–1981 (42 U.S.C. § 9902(2)).

Workman acknowledged that she had not reapplied for representation in the present case, but maintained that her financial circumstances remained unchanged.

Upon Workman's request for counsel, the Circuit Court proceeded to conduct an indigency hearing, during which it made an independent inquiry into Workman's financial situation to determine whether Workman qualified for appointed counsel. Prior to examining the specific details of Workman's ability to compensate private counsel, the trial court described its perception of the local OPD's indigency evaluation process and its relation to the statutory provisions governing such determinations:

> Okay. Well, here's what the Court notes: First of all, the prior head of the Public Defender's Office has already told us they know they do not follow the law. The law requires them to follow a certain case that came out.[5]  Let me find it here. I don't have the name of the case but Article 27A, Section 7,[6] talks about the case. It says exactly what the public defender has to do and so does Section 7. They have to go down a certain list of criteria about what the average

(3) In cases where good cause is shown, a district public defender or division chief may exempt an applicant from the maximum income level requirement upon due consideration of factors enumerated in Regulation .05 of this chapter.

COMAR 14.06.03.05D. Although no statute or regulation defines the phrase "net annual income level," the "Application for Public Defender Services" contained in COMAR 14.06.03.08 requests information from the applicant concerning his or her "total net monthly income" and provides entries for net income from "Employer," "Self-employment," "Social Security," "Unemploy/Strike Benefits," "Alimony/Child Support," "Workman's Compensation," "Other," and "Pensions/Insurance Payments." The application and regulation do not state whether "net income" should be calculated using pre-tax or post-tax income.

5. It is clear from the record that the Circuit Court was referring to the Court of Special Appeals's decision in *Baldwin v. State*, 51 Md.App. 538, 444 A.2d 1058 (1982).

6. In 2008, Article 27A, § 7, was re-codified as Maryland Code, Criminal Procedure Article § 16–210. Because the proceedings in the present case occurred prior to the re-codification, we shall refer to the provisions of Article 27A, the version of the statute in effect at the time.

attorney would charge in the area, or a competent attorney, and the Court finds that $2,000 [ [7]] for what you're charged with would certainly be the low end of reasonable, and then they have to figure out exactly what it would cost you to be represented by a private attorney, plus to perform all other functions, including investigating and getting expert witnesses, functions a private attorney would do. What they have done, though, they have gone ahead and gotten a regulation passed that is contrary to that law, and the Court is—it's required to follow that law. And like I said, the former head of the PD's Office said they—though they are supposed to follow it, they don't follow it and they aren't going to follow it, at least while she was there.

Following its explanation, and obviously treating the local OPD's denial of representation to Workman in the contemporary trailing case, K–03–129, as conclusive of how it would respond to Workman in the present case, the court turned to examine Workman's financial condition and her ability to compensate private counsel, utilizing the factors to be considered in determining indigency contained in Maryland Code, Article 27A, § 7; [8] COMAR 14.06.03.05A; and *Baldwin;* [9]

---

**7.** According to the record, the figure of $2,000 came from a quote received by Workman from a local attorney with whom she consulted prior to the indigency hearing.

**8.** Article 27A, § 7, entitled "Determination of eligibility for services; investigation of financial status of defendant; recovery of expenses," provides in pertinent part:

(a) Determination of eligibility for services.—Eligibility for the services of the Office of the Public Defender shall be determined on the basis of the need of the person seeking legal representation. Need shall be measured according to the financial ability of the person to engage and compensate competent private counsel and to provide all other necessary expenses of representation. Such ability shall be recognized to be a variable depending on the nature, extent and liquidity of assets; the disposable net income of the defendant; the nature of the offense; the effort and skill required to gather pertinent information; the length and complexity of the proceedings; and any other foreseeable expenses. In the event that a determination of eligibility cannot be made before the time when the first services are to be rendered, the office may undertake representation of an indigent person provisionally, and if it shall subsequently determine that

rather than applying the maximum net annual income rule contained in COMAR 14.06.03.05A and D(2), the standard used by the local OPD. During the indigency colloquy conducted by the court, Workman testified that: (1) her entire income consisted of $1036 per month in Social Security total disability benefits as the result of her recurring depression and bipolar disorder; (2) she possessed no savings or other assets and lived on a month-to-month basis; (3) her expenses consisted of $250 per month for rent and water, $20 per month for trash pickup, $100–$150 per month for electricity, $110 per month for heat, $250 per month for food, and $40 per month for homeowners' fees; and, (4) she had cut off her phone service and did not own a vehicle, relying instead on transportation provided by neighbors or a mental health counseling service. Based on the $2,000 fee quotation for representation Workman received from the private attorney with whom she consulted, and Workman's dearth of disposable income, which apparently amounted at most to somewhere between $216 and $266 per month, the Circuit Court determined that Workman clearly could not afford a private attorney and, therefore, was entitled to representation at public expense as an indigent defendant in a qualifying criminal case.

Upon concluding that Workman qualified as indigent and was entitled to representation, the trial court described the lack of options it believed confronted it regarding the appointment of counsel on Workman's behalf, and its conclusion that, absent the State filing for a writ of mandamus to compel the

---

the person is ineligible, it shall so inform the person, and the person shall thereupon be obliged to engage his own counsel and to reimburse the office for the cost of the services rendered to that time. Md.Code, Art. 27A, § 7 (1957, 2003 Repl.Vol.).

9. Under *Baldwin*, when conducting its own determination of eligibility for public representation based on indigency, a court should consider "any information offered by the parties which may reasonably bear upon the defendant's ability to afford private counsel...." 51 Md.App. at 553, 444 A.2d at 1067. In that case, the Court of Special Appeals noted that "the real key to determining indigence (eligibility) is stated in § 7(a)." *Id.* at 550, 444 A.2d at 1066.

local OPD to represent Workman, the criminal case should be dismissed:

The Court also notes for the record that the Bar Association has indicated that it is not going to—none of its members is going to supply any service free. They are absolutely not going to do it, unless it's through something like Maryland Volunteer Lawyers.

The Court also notes for the record that—and I've put all of this on the record: The Court notes for the record that any attorney who does take this type of case free is required to do every single thing that Article 27A, Section 7, states in there about what the public defender is expected to do. That means investigate, pay for all expert witnesses. And a private attorney faces disciplinary proceedings if the private attorney takes a case like this and does not pay for all of those things out of his or her own pocket. And again, the Bar Association has indicated they are not going to do any of this for free.

We have gone to the County Commissioners, and I'm citing a letter dated March 19, 2003. They indicate, and they confirmed this subsequently, that the Board of County Commissioners has absolutely no funds available for paying—they call it public defender fees. They are not covered by the State of Maryland. What they mean is those fees for attorneys that are not—again, not covered by the public defender. And again, they reiterated this.

I will note that according to my conversations with Chief Judge Bell and our research—we researched 42 states. Judge Bell has gone way beyond that. He's had somebody research all the states in the US. Maryland is the only state in the United States that does not permit a judge as a final solution to appoint counsel or appoint a public defender for a person charged with a criminal offense. All other states permit that. I think they may be working something through the Legislature to try to fix that.

Under these circumstances the Court finds that $2,000 is the minimum reasonable amount for defense of this case. And based on that, what the Court is going to do is the

Court is going to dismiss the charges against you because there is no attorney that can take the case and you're also totally disabled.

This is really an affront to people with disabilities. You're totally disabled and you do not have the income to cover this or even close to covering it. So the Court is going to dismiss the case unless the State within 30 days files a writ of madamus (sic) against the Public Defender's Office, which in the past they have indicated they will consider doing, requiring the public defender to follow the law.

It's under *State versus Baldwin*. That required them to actually pass Article 27A, and the Court is required to follow that. And again, for the record, what the State PD's office has done is to get a regulation passed that allows them—seemingly allows them in total contradiction of *Baldwin*, to take 110 percent of the federal poverty limit regardless of the charges that are against you, regardless of what it would cost you to hire an attorney, with no consideration of any of those things. And then in the middle of their regulation they say, well, something to the effect that the head public defender can review this under *Baldwin*, if necessary, but obviously they have not in your case at all. So again, what I'm doing, I'm going to order this to be dismissed within 30 days unless the State during that period of time files a writ of madamus (sic) to require the public defender to do what it's supposed to do, and if the public defender does not do that, this is dismissed within 30 days. Okay. Thank you.

Following the Circuit Court's indigency hearing, the local OPD indeed refused to appoint counsel for Workman and the State did not file a mandamus action to compel the local OPD to appoint counsel on Workman's behalf. Accordingly, because of its perception that there was "no attorney that [could] take the case," the Circuit Court dismissed, with prejudice, the charges against Workman.

The State challenged the dismissal of the charges in an appeal noted to the Court of Special Appeals. Adopting the

State's position, the intermediate appellate court, in an unreported opinion, vacated the Circuit Court's judgment. Citing and relying on *Thompson v. State,* 284 Md. 113, 394 A.2d 1190 (1978), the Court of Special Appeal agreed with the Circuit Court's conclusion that it did not have the authority to compel the local OPD to represent a defendant after the local OPD denies eligibility. Our appellate brethren were of a different mind, however, with regard to the option, namely, dismissal with prejudice of the charges, that the trial court chose in order to remedy what the court perceived to be an inappropriate and erroneous decision by the local OPD to deny representation. According to the intermediate appellate court, dismissal of the criminal charges against Workman in response to the local OPD's erroneous eligibility determination constituted an inappropriate exercise of "judicial circumvention." The court explained:

> Because the circuit court had no authority to order the State's Attorney to file a petition for a writ of mandamus compelling the OPD to represent [Workman], the court also lacked authority to dismiss the case based on the State's Attorney's failure to file such a petition.
>
> \* \* \*
>
> While the court below did have an interest in protecting [Workman's] right to counsel, it could have served that interest by, itself, appointing counsel to represent [Workman]. Dismissal, with prejudice, of the charges against [Workman], in this instance, was an 'unnecessary assertion of power' and thus not 'necessary to the performance of the judicial function.'

We granted Workman's timely-filed petition for writ of certiorari,[10] 407 Md. 276, 964 A.2d 675 (2009), to consider the following question, as framed by Workman:

---

10. Following our grant of certiorari, the Circuit Court issued an order appointing the local OPD to represent Workman. The order specifically named John K. Northrop, Deputy District Public Defender for Cecil County, or another "qualified attorney from its office or from its list of panel attorneys to provide legal representation." An identical order

Whether the trial court properly exercised its inherent authority to dismiss criminal charges against Ms. Workman where it was necessary to protect her constitutional right, to counsel and to a speedy trial?

### *ANALYSIS*

In *Office of Public Defender v. State*, 413 Md. 411, 993 A.2d 55, 2010 WL 1507944 (2010) (*"OPD"*), we considered the question of a trial court's authority to appoint an attorney from the local OPD to represent a defendant to whom the local OPD has denied representation improperly. We held that, where the trial court determines that the local OPD denied representation erroneously, due to the local OPD's failure to consider the statutorily-mandated indigency factors contained in Art. 27A, § 7, and COMAR 14.06.03.05A, to a defendant in a criminal case whom the court find qualifies as indigent according to those factors, the trial court possesses the authority, pursuant to its role as "ultimate protector" of the defendant's Constitutional right to counsel and the provisions of Art. 27A, § 6(f),[11] to appoint an attorney from the

---

appointing the local OPD was entered subsequently in the case of *State v. Jason Stinnett*. The propriety of that order was the subject of another appeal, and was addressed by this Court, in *Office of Public Defender v. State*, 413 Md. 411, 993 A.2d 55, 2010 WL 1507944 (2010) ("OPD"). More particularly, in *OPD*, we considered whether a trial court possesses the authority, statutory or otherwise, to appoint an attorney from the local OPD to represent an indigent individual, once the court determines that the local OPD denied improperly representation. As we see it, the resolution of that question controls the disposition of the present case.

**11.** Section 6(f), entitled "Authority of courts to appoint counsel in certain situations," provides:

> Nothing in this article shall be construed to deprive any court mentioned in § 4(b)(2) of this article of its authority to appoint an attorney to represent an indigent person where there is a conflict in legal representation in a matter involving multiple defendants and one of the defendants is represented by or through the Office of the Public Defender, or where the Office of the Public Defender declines to provide representation to an indigent person entitled to representation under this article.

Art. 27A, § 6(f).

local OPD to represent the indigent individual, unless an actual and unwaived or unwaivable conflict of interest would result thereby. *OPD,* 413 Md. at 434, 993 A.2d at 69.

The facts in *OPD* are strikingly similar to those in the present case. In *OPD,* Jason Flynn Stinnett ("Stinnett"), the defendant in the underlying criminal case, was charged with multiple burglary counts and related offenses. *Id.* at 415, 993 A.2d at 57. Having determined that his "income exceed[ed] the allowable limit" of 110% of the Federal Poverty Guidelines, which, under COMAR 14.06.03.05A and D(2) represents the income ceiling beyond which the local OPD may deny representation to applicants, the local OPD declined Stinnett's request to have counsel provided to represent him. *Id.* at 415–17, 993 A.2d at 57–59. Upon Stinnett's renewed request for counsel made to the trial court, the trial court conducted an independent inquiry to determine Stinnett's indigency. *Id.* at 417–20, 993 A.2d at 58–60. It found Stinnett to be indigent, and, therefore, eligible for appointed counsel. *Id.* at 420, 993 A.2d at 61. Consequently, notwithstanding that the local OPD had declined previously to provide representation to Stinnett, the court issued an order appointing John K. Northrop ("Northrop"), the Deputy District Public Defender for Cecil County, or, in the alternative, another attorney from the local OPD or its list of panel attorneys, as Stinnett's counsel. *Id.* At the subsequent hearing in Stinnett's case, Northrop did not appear on Stinnett's behalf, whereupon the court held Northrop in contempt of court and fined him $10.00. *Id.* at 421, 993 A.2d at 61. Northrop appealed the contempt judgment issued against him. *Id.*

At the outset of our decision, we found that the local OPD's denial of representation to Stinnett was improper. *Id.* at 424–28, 993 A.2d at 63–66. We noted that, rather than apply the statutorily-mandated criteria for determining indigency provided by Art. 27A, § 7, the local OPD, in denying representation, relied solely on certain language contained in COMAR 14.06.03.05A and D(2) which purports to permit the local OPD to measure an applicant's eligibility based on the applicant's

maximum net income level and asset ceiling. *Id.* at 424, 993 A.2d at 63. By evaluating Stinnett's application solely under the maximum annual net income and asset ceiling standard of COMAR 14.06.03.05A and D(2), while ignoring wholly the statutorily-mandated indigency factors contained in § 7(a) and COMAR 14.06.03.05A, the local OPD applied the incorrect standard for determining indigency of applicants and erred, both legally and factually, in concluding that Stinnett did not qualify for representation by its attorneys.[12] *Id.* at 426, 993 A.2d at 64.

Turning to the question of the Circuit Court's authority to appoint the local OPD to represent an indigent criminal defendant, upon finding that the local OPD denied representation improperly, we noted that, although Art. 27A, § 7, provides that the initial determination of indigency is to be made by the local OPD based upon the statutory indigency factors, the local OPD's determination of indigency is not final. *Id.* at 432, 993 A.2d at 67. We observed that:

> "[i]n obvious recognition of the fact that the whole system has Constitutional underpinnings and that the courts must, of necessity, be the ultimate protector of those underpinnings," [ ] the General Assembly provided in Art. 27A, § 6(f), a clear oversight and corrective role for the courts in the indigency determination and appointed-counsel process.

*Id.* at 432, 993 A.2d at 68 (internal citation omitted). Regarding the language of Art. 27A, § 6(f), we stated:

> Of utmost importance to the present case, Art. 27A, § 6(f), contains no language indicating a legislative intent to pro-

---

**12.** In footnote 12 of our decision in *OPD,* we noted that, although not called on to address directly the validity of COMAR 14.06.03.05A and D(2) in that case, a compelling argument exists that those subsections, as they presently stand, allowing the local OPD to consider an applicant's maximum net annual income and asset ceiling in determining eligibility for representation, rather than mandating consideration of the six indigency factors, are unauthorized by, and, in fact, conflict directly with, § 7, their enabling statute. *OPD,* 413 Md. at 426 n. 12, 993 A.2d at 64. For a fuller discussion of the history of COMAR 14.06.03.05A, *see id.*

hibit the appointment of an attorney from the local OPD by a trial court to represent an individual that the court determines qualifies as indigent, except where an actual and unwaived or unwaivable conflict of interest would arise.[] Despite the OPD's argument to the contrary, the proposition that a court may not appoint the local OPD against its wishes finds its legal toehold solely in the crevice of the unpersuasive dicta of *Thompson* and *Baldwin*. In order to conclude, as the OPD urges, that Art. 27A, 6(f), prohibits the court, in exercising its responsibility to appoint counsel for an indigent defendant, from appointing an attorney from the local OPD, after the local OPD has refused to provide representation, we would have to add the phrase "other than the local OPD" to the language of Art. 27A, § 6(f), which states that the court may "appoint an attorney to represent an indigent defendant." Such a judicial insertion into clear legislative language violates sound canons of statutory interpretation and should be avoided. *See Lonaconing Trap Club, Inc. v. Dep't of Env't,* 410 Md. 326, 339, 978 A.2d 702, 709 (2009) (stating that we neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute). Although it is clear that the court may not appoint the local OPD where the local OPD is prevented from representing an indigent defendant due to an actual and unwaived or unwaivable conflict of interest,[] the language of Art. 27A, § 6(f), contains no language prohibiting a court from appointing the local OPD where it determines that the local OPD found improperly that a defendant did not qualify for representation based on the local OPD's failure to consider the appropriate eligibility criteria, consideration of which is mandated by Art. 27A, § 7. To the extent *Thompson* and *Baldwin* relied on the statutory scheme in support of the conclusion that the court may not appoint the local OPD to represent an indigent defendant where the local OPD declined representation of that individual erroneously, such reliance was wholly misplaced.

*Id.* at 432–34, 993 A.2d at 67–69 (footnotes omitted). As such, we held that:

> in accordance with the provisions of Art. 27A, §§ 6 and 7, and the holdings of *Thompson* and *Baldwin,* where the local OPD declines representation to a defendant erroneously, because of the local OPD's failure to consider properly the statutorily-mandated criteria for determining indigency, and where a court finds, upon subsequent mandatory independent review, that the individual qualifies for representation, the court, in carrying out its role as "ultimate protector" of the Constitutional right to counsel, may appoint an attorney from the local OPD to represent the indigent individual unless an actual and unwaived or unwaivable conflict of interest would result thereby.

*Id.* at 434, 993 A.2d at 69.

■ Our holding in *OPD* resolves the key issue before us in the present case. During Workman's indigency hearing, the Circuit Court expressed clearly its belief that it was without authority to appoint directly an attorney from the local OPD to represent Workman, and that its only alternative to dismissal, with prejudice, of the charges was to attempt to leverage the State into seeking, within 30 days, a writ of mandamus compelling the local OPD to serve as counsel for Workman. As noted *supra,* under our decision in *OPD,* the Circuit Court was mistaken in its fundamental premise (a misunderstanding fostered by the now disfavored dicta in *Thompson* and *Baldwin* ). Upon finding that the local OPD denied representation improperly to Workman, and determining that Workman, in fact, was indigent under the statutory indigency factors, the Circuit Court possessed, under Art. 27A, § 6(f), the authority to appoint an attorney from the local OPD to represent Workman on the charges brought against her. Moreover, upon finding that Workman was unable to afford counsel and that the local OPD had denied representation, the Circuit Court had an affirmative duty to protect Workman's Constitutional right to counsel by appointing an attorney to serve on Workman's behalf. *See Thompson,* 284 Md. at 129, 394 A.2d at 1198 (noting that "there is the clear

duty imposed on the court, in order to decide whether it should appoint counsel, upon the Public Defender declining to do so, to make its own independent determination whether a defendant is indigent and otherwise eligible to have counsel provided"); *Baldwin,* 51 Md.App. at 552–53, 444 A.2d at 1067–68. Rather than engage in judicial circumvention by requiring the State to seek a mandamus order against the local OPD and threaten dismissal of the criminal charges upon its failure to do so, the Circuit Court should have appointed directly an attorney from the local OPD as Workman's counsel, in the same manner in which the court chose to proceed in *OPD.* As such, the Circuit Court's entry of dismissal, with prejudice, of the charges against Workman constituted an inappropriate judicial response to the situation with which it was confronted and must be reversed.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.**

Concurring Opinion by BELL, C.J., which BATTAGLIA and GREENE, JJ., join.

BELL, C.J.

The Majority and I have a fundamental dispute, not with regard to the propriety of the dismissal of the charges against Evelyn Susan Workman, the petitioner, on that we agree that they should not have been, but, rather with respect to authority of the trial court to appoint the Office of the Public Defender, (*"OPD"*), once that office had declined to represent the petitioner. With regard to the latter issue, the Majority holds that:

> "once [the trial court] determined that the local OPD denied improperly representation to Workman, the Circuit Court possessed the authority to appoint the local OPD as counsel for Workman, we agree with the judgment of the Court of Special Appeals, albeit on different grounds, that the Circuit Court erred by ordering dismissal of the underlying criminal charges."

*Workman v. State,* 413 Md. 475, 477, 993 A.2d 94, 95, 2010 WL 1507946 (2010).

I emphatically disagree. My reasons are set out in detail in my Dissenting and Concurring Opinion in *Office of Public Defender v. State,* 413 Md. 411, 993 A.2d 55, 2010 WL 1507944 (2010). Distilled to its essence, I continue to believe that this Court previously, and correctly, resolved this issue in *Thompson v. State,* 284 Md. 113, 394 A.2d 1190 (1978), when it held that, pursuant Maryland Code (1957, 1976 Replacement Vol.) Article 27A § 6(f), if the OPD declines to represent a defendant, claiming to be indigent, the court has a responsibility to conduct an independent indigency assessment, and appoint counsel if that assessment indicates that the defendant is indeed indigent. To reach its preferred result, as my dissent demonstrates, the majority disregards this and other precedent, identified in my dissent, *See OPD,* 413 Md. at 444–73, 993 A.2d at 75–93, flaunts separation of powers and rides rough-shod over the applicable statutory text and scheme.

Judges BATTAGLIA and GREENE join in the views herein expressed.