989 A.2d 785

**Constance WALKER**

v.

**STATE of Maryland.**

**No. 1388 Sept.Term, 2008.**

Court of Special Appeals of Maryland.

Feb. 25, 2010.

Martha Weisheit (Elizabeth L. Julian, Acting Public Defender, on the brief), Baltimore, MD, for Appellant.

Ryan R. Dietrich (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: ZARNOCH, MATRICCIANI and JAMES S. GETTY (Retired, Specially Assigned), JJ.

MATRICCIANI, Judge.

Constance Walker, appellant, was convicted by a jury in the Circuit Court for Baltimore County of second-degree assault and sentenced to 23 months of imprisonment, with all but 12 months suspended in favor of three years of probation.[1] Appellant asks the following question on appeal: Did the trial court err in ruling that she had waived her right to counsel under Md. Rule 4–215(b) when, after she explained that she

---

[1]. The trial court also imposed a $1,000 fine and ordered appellant to pay $225 in restitution and court costs.

was found ineligible for representation by the Public Defender's Office and could not afford private counsel, the court did not inquire as to whether she was entitled to court-appointed counsel? We answer the question in the affirmative for the reasons that follow. Accordingly, we shall reverse the judgment of the circuit court and remand for a new trial.

## FACTS

Viewing the evidence in the light most favorable to the State, it was established that on March 17, 2008, the appellant repeatedly hit Tahlene Shipley and bit her on the cheek when the two became involved in a disagreement. The disagreement concerned money that the appellant allegedly owed for construction work performed by Ms. Shipley's husband. The appellant was charged that same day with second-degree assault.

On May 20, 2008, the appellant appeared in District Court and prayed a jury trial. Her case was transferred to the Circuit Court and trial was scheduled for June 6, 2008. On that date, appellant appeared without counsel. The case was postponed because no jury was available. Trial was rescheduled for July 16. On that date, appellant again appeared for trial without counsel and the following colloquy occurred:

THE COURT: Ma'am, have you received a copy of the charging document in this case?

[APPELLANT]: Yes.

THE COURT: Do you understand you have a right to be represented by an attorney at every stage of these proceedings?

[APPELLANT]: Yes.

THE COURT: Do you also understand that you've been charged with second-degree assault? That carries a possible penalty of ten years and/or a $2500 fine.

[APPELLANT]: Yes.

THE COURT: An attorney can be of important help to you in determining whether or not there may be defenses to the

charges or circumstances in mitigation thereof, and in preparing for and representing you at the trial of these charges. Even if you wanted to plead guilty, an attorney could be of substantial help in developing and presenting information which could affect the sentence or other disposition. If you cannot afford to hire an attorney, you could apply to the Public Defender's [O]ffice. It's a little late to do that, unless you're granted a postponement by the administrative judge. And you've already been notified by other judges that if you appeared for trial without an attorney, that could be construed as a waiver of your right to an attorney by showing up without one or refusing to make a timely application.

Do you understand that?

[APPELLANT]: Yes.

THE COURT: Have you applied to the Public Defender's Office?

[APPELLANT]: Yes.

THE COURT: When did you apply to them?

[APPELLANT]: Right after the incident. It was within a few days of the incident, but they said I wasn't eligible.

THE COURT: So you applied back in March of this year?

[APPELLANT]: Uh-huh. March or first week in April or end of March.

THE COURT: Have you sought the services of a private attorney?

[APPELLANT]: Yes.

THE COURT: Do you want to proceed without an attorney at this time?

[APPELLANT]: Yes.

THE COURT: Okay. You don't want to ask for a postponement to get one?

[APPELLANT]: Can't afford it.

THE COURT: Okay.

Appellant proceeded to trial *pro se.* As related above, she was ultimately convicted of second-degree assault and the court imposed a sentence of incarceration.

## DISCUSSION

On appeal, appellant argues that her conviction must be reversed because the trial court erred in accepting her waiver of her right to counsel under Md. Rule 4–215. The basis of her argument is that, after she informed the court that the Office of the Public Defender had found her ineligible for their services and that she could not afford a private attorney, the court erred by not conducting an inquiry into whether she was nonetheless indigent and, therefore, entitled to court-appointed counsel.[2] Thus, the record does not show that she voluntarily waived her right to counsel; rather, the record shows that she elected to represent herself because she believed she had no other choice.[3] Appellant cites *Baldwin v. State,* 51 Md.App. 538, 444 A.2d 1058 (1982) and *Davis v. State,* 100 Md.App. 369, 641 A.2d 941 (1994) in support of her argument.

The State counters that appellant's "unequivocal and express waiver of her right to counsel was made voluntarily"

2. Appellant does not ask us to review the actions of the Office of Public Defender (OPD) in declining to represent her. As we have previously noted, the OPD is an executive agency and we do not directly review its discretionary decisions for to do so "would be an exercise of original jurisdiction [ ] outside the scope of our authority." *Moore v. State,* 154 Md.App. 578, 585, 841 A.2d 31 (2004), *aff'd,* 390 Md. 343, 889 A.2d 325 (2005). If the Public Defender's Office has abused its discretion, the matter is best left to post-conviction proceedings. *Id.*

3. There are currently two cases pending before the Court of Appeals where the Court is tasked with resolving some of the practical issues that arise when the OPD determines that a defendant is not eligible for representation and the defendant cannot afford a private attorney. The first case is *Office of the Public Defender v. State,* No. 9, ST 2009 (argued Sept. 9, 2009), addressing whether a circuit court can order the Office of Public Defender to represent a defendant after they have declined to provide representation. The second case is *Workman v. State,* No. 2, ST 2009 (argued Sept. 10, 2009), where the issue is whether the trial court can dismiss charges against a defendant who has been denied representation by the OPD.

because she was made aware of her right to seek court-appointed counsel in her charging documents. The State argues that the holdings in *Baldwin* and its progeny should be reinterpreted in light of major changes made to the Maryland Rules by the Court of Appeals in 1984, which de-emphasized verbal notice in favor of written notice. The State concludes that because of the 1984 changes, and because she was aware of her right to court-appointed counsel in her charging documents yet never requested court-appointed counsel from the trial court, the trial court did not err in not conducting an inquiry into whether she was entitled to court-appointed counsel.

■ "The right to counsel is guaranteed by the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights." *Jones v. State*, 175 Md.App. 58, 74, 924 A.2d 336 (2007) (citing *Gideon v. Wainwright*, 372 U.S. 335, 342–43, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) and *Walker v. State*, 391 Md. 233, 245, 892 A.2d 547 (2006)) (footnote omitted). The right includes the right to be represented by counsel and the corresponding right to proceed without the assistance of counsel. *Gregg v. State*, 377 Md. 515, 548, 833 A.2d 1040 (2003) (citing *Faretta v. California*, 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)).

To implement and protect this fundamental right to counsel, the Court of Appeals adopted Md. Rule 4–215. *Parren v. State*, 309 Md. 260, 281–82, 523 A.2d 597 (1987). That rule sets forth the procedure that a court must follow when a defendant waives his right to counsel. Sections (a) and (d) are relevant to the argument presented and read as follows:

(a) **First Appearance in Court Without Counsel.**—At the defendant's first appearance in court without counsel, or when the defendant appears in the District Court without counsel, demands a jury trial, and the record does not disclose prior compliance with this section by a judge, *the court shall:*

(1) Make certain that the defendant has received a copy of the charging document containing notice as to the right to counsel.

(2) Inform the defendant of the right to counsel and of the importance of assistance of counsel.

(3) Advise the defendant of the nature of the charges in the charging document, and the allowable penalties, including mandatory penalties, if any.

(4) Conduct a waiver inquiry pursuant to section (b) of this Rule if the defendant indicates a desire to waive counsel.

(5) If trial is to be conducted on a subsequent date, advise the defendant that if the defendant appears for trial without counsel, the court could determine that the defendant waived counsel and proceed to trial with the defendant unrepresented by counsel.

The clerk shall note compliance with this section in the file or in the docket.

\* \* \*

**(b) Express Waiver of Counsel.** If a defendant who is not represented by counsel indicates a desire to waive counsel, *the court may not accept the waiver until it determines, after an examination on the record conducted by the court, the State's Attorney, or both, that the defendant is knowingly and voluntarily waiving the right to counsel.* If the file or docket does not reflect compliance with section (a) of this Rule, the court shall comply with that section as part of the waiver inquiry. The court shall ensure that compliance with this section is noted in the file or on the docket. At any subsequent appearance of the defendant before the court, the docket or file notation of compliance shall be prima facie proof of the defendant's express waiver of counsel. After there has been an express waiver, no postponement of a scheduled trial or hearing date will be granted to obtain counsel unless the court finds it is in the interest of justice to do so. (Emphasis added).

██ Md. Rule 4–215 is mandatory. *Johnson v. State,* 355 Md. 420, 446–61, 735 A.2d 1003 (1999). If the mandates of Rule 4–215 are not strictly complied with, reversal is required. *Moten v. State,* 339 Md. 407, 411–12, 663 A.2d 593 (1995); *Williams v. State,* 321 Md. 266, 274, 582 A.2d 803 (1990).

██ Pursuant to Maryland law, two options are available to defendants in criminal cases who are financially unable to retain their own counsel. *Davis v. State,* 100 Md.App. 369, 380, 641 A.2d 941 (1994). The defendant may seek representation from the Public Defender's Office. Section 16–210(a) of the Criminal Procedure Article ("C.P.") of the Maryland Code (2001, 2008 Repl.Vol.) provides that "[a]n individual may apply for services of the Office as an indigent individual, if the individual states in writing under oath or affirmation that the individual, without undue financial hardship, cannot provide the full payment of an attorney[.]" Eligibility for Office of the Public Defender's services shall be determined by the need of the applicant, which "shall be measured according to the financial ability of the applicant to engage and compensate a competent private attorney and to provide all other necessary expenses of representation." Section 16–210(b)(1)–(2). The statute lists six factors in determining an applicant's financial ability: (1) the nature, extent, and liquidity of assets; (2) the disposable net income of the applicant; (3) the nature of the offense; (4) the length and complexity of the proceedings; (5) the effort and skill required to gather pertinent information; and (6) any other foreseeable expense. Section 16–210(b)(3)(i)–(vi).

Additionally, defendants may seek representation from a court-appointed attorney. C.P. § 16–213 provides that "[t]his subtitle does not prohibit the appointment of an attorney to represent an indigent individual by the District Court, a circuit court, or the Court of Special Appeals if . . . the Office declines to provide representation to an indigent individual entitled to representation under this subtitle."

Appellant seeks to align the facts of her case with *Baldwin* and *Davis;* the State seeks to distinguish those cases. Accordingly, we shall discuss them at length.

In *Baldwin*, 51 Md.App. 538, 444 A.2d 1058, a two-year investigation by State and Federal authorities culminated in the raid of a business and farmhouse. Based on the large quantities of phencyclidine seized during the raids, Baldwin was charged and convicted of several drug-related crimes.[4] We reversed his convictions on appeal, holding that the warrants authorizing the raids were invalid.[5] Following our reversal and pending the State's appeal of his convictions, Baldwin posted $100,000 bond, secured by property owned by his parents.

After those issues were resolved, the State sought a second trial. In preparation for his retrial, Baldwin applied to the Public Defender's Office for an attorney. Baldwin had hired private attorneys for his first trial and the appeals associated with it. The Office declined to represent him, finding him not indigent and having "resources of a most substantial kind." *Baldwin*, 51 Md.App. at 540–41, 444 A.2d 1058. Specifically, the Office denied representation because of Baldwin's ability to post a large bond and earn an income although he was not employed, his college education, and the fact that he had no personal living expenses.

Baldwin appeared for his second trial without counsel. The trial court went through the litany of informing him of the advantages of counsel and the disadvantages of representing oneself. Aware that the Public Defender's Office refused to represent Baldwin, the court, at Baldwin's request, agreed to determine if the court would appoint him an attorney. Baldwin told the court that he still owed money to his former trial and appellate attorneys, and that he did not have money to hire an attorney for his second trial. The District Public

---

4. Specifically, Baldwin was convicted of seven counts: one count of manufacturing phencyclidine, and two counts each of possession with intent to distribute phencyclidine, possession of drug paraphernalia, and maintaining a common nuisance. *Baldwin*, 51 Md.App. at 539, 444 A.2d 1058.

5. *See Baldwin v. State*, 45 Md.App. 378, 413 A.2d 246 (1980), *aff'd*, 289 Md. 635, 426 A.2d 916 (1981), *cert. denied, Baldwin v. Maryland*, 454 U.S. 852, 102 S.Ct. 295, 70 L.Ed.2d 144 (1981).

Defender related that Baldwin, in his application to the Public Defender's Office, stated that he made $2,000 a year as a photographer, and that he had no income, bank accounts, cash, cars, or stocks or bonds. The court added that Baldwin's "economic status" could be calculated to include those items seized in the raids, including $17,000 in cash, three boat titles, and other items. *Id.* at 542–43, 444 A.2d 1058. Baldwin protested the consideration of those items, arguing that they were held by the authorities and not available to him. The court nonetheless considered those items and denied Baldwin's petition for a court-appointed counsel, scheduling trial for six weeks hence.

Baldwin appeared for trial without counsel and reiterated his lack of financial resources, stating that his parents put up their house and property for collateral on his bond and were unable to assist him further financially. *Id.* at 544, 444 A.2d 1058. Additionally, he reiterated that he was unable to prepare for trial or represent himself given the complexity of the case. *Id.* Finding that there was "no change" in his circumstances since the last ruling, the court denied the motion and proceeded to trial. This time Baldwin was convicted of four counts only. *Id.* at 545, 444 A.2d 1058.

On appeal, we again reversed Baldwin's convictions. We recognized that a court has no authority to order the Public Defender to provide representation when it declines to do so. *Id.* at 552, 444 A.2d 1058 (citing *Thompson v. State,* 284 Md. 113, 394 A.2d 1190 (1978)). Nonetheless, we held that when the Public Defender declines to represent an accused on grounds of non-indigence, a court must conduct its own inquiry into the accused's indigence "to assure compliance with appellant's Constitutional right of counsel, in accordance with its authority under § 6(f) of art. 27a." [6] *Id.* at 553, 444 A.2d 1058. Because the cited section provided little guidance on

---

6. Crim. Proc. Art., § 16–213, which was codified in 2008, was derived with new language but without substantive change from former Art 27A § 6(f).

how a court was to make an independent eligibility determination, we set forth the following guidelines:

(1) The court must conduct its own inquiry into the matter. It is not restricted to the information relied upon by the Public Defender, or to the Public Defender's evaluation of such information. Rather, the court should consider any information offered by the parties which may reasonably bear upon the defendant's ability to afford private counsel, and make its own evaluation of the relevance and credibility of such information and the weight to be accorded it.

(2) The proceeding may be as formal or informal as the court directs. The court may require testimony under oath or it may simply hear from the parties and witnesses as it did here.

(3) The court must weigh the evidence before it and make its determination in accordance with the criteria set forth in § 7(a). Although it may evaluate the evidence differently than the Public Defender, it must use the same statutory standards. That is evident not only from the whole scheme of art. 27A, but from the particular language used in § 6(f). That section, as noted, authorizes the court to appoint counsel for "an indigent person entitled to representation under this article." An "indigent person entitled to representation" is one declared "eligible" pursuant to the standards laid down in § 7(a).[7]

*Baldwin,* 51 Md.App. at 553–54, 444 A.2d 1058 (footnote omitted).

The holding in *Baldwin* was reaffirmed in *Davis,* 100 Md. App. 369, 641 A.2d 941. In *Davis,* Pamela Davis was charged with several drug-related charges stemming from the execution of a search warrant at Davis's home.[8] When she made

---

7. Crim. Proc. Art., § 16–210, which was codified in 2008, was derived with new language but without substantive change from former Art. 27A § 7(a).

8. Specifically, Davis was charged with possession of marijuana with the intent to distribute, maintaining a common nuisance, possession of

her initial appearance without counsel in the circuit court, the following dialogue ensued:

COURT: Do you have an attorney, Ms. Davis?

DAVIS: I do not.

COURT: Do you plan to have one?

DAVIS: I cannot afford an attorney, a private attorney, and I do not qualify for a Public Defense, because I am a property owner and have considerable assets, which are— basically, my assets cannot be borrowed against. Because of the State's action against me, the bank, who has handled my personal line of credit, has frozen my line of credit, and so, I intend to defend myself in this action.

COURT: All right. You know your trial date is September 23, 1992. Is that correct?

DAVIS: Yes, sir, I do.

COURT: Whether you plan to plead guilty or innocent to these charges, an attorney can help you present your case in a light most favorable to yourself. You say that the Public Defender says you have too many assets.

DAVIS: That's my understanding, that my assets exceed that which would be considerable ...

COURT: All right.

DAVIS: ...—considered, you know to entitle me to a defense by public taxpayer money.

\* \* \*

COURT: The Court strongly urges that you be represented by an attorney, but that's a decision that you'll have to make in either event. If you appear for trial on the date of trial,—look at that again—September 23rd, 1992, without an attorney, the Court could deem that you waived your rights to one and proceed and try you that day without an attorney.

DAVIS: I understand that.

---

marijuana, and possession of drug paraphernalia. *Davis,* 100 Md.App. at 374, 641 A.2d 941.

*Id.* at 375, 641 A.2d 941. Two days prior to Davis's trial, private counsel entered an appearance on her behalf. *Id.* at 377, 641 A.2d 941. Davis was ultimately convicted of maintaining a common nuisance, possession of marijuana, and possession of drug paraphernalia.

Davis appealed, arguing that the trial court erred in failing to waive the thirty-day limitation for filing a motion to suppress because she demonstrated the requisite good cause. She also argued that the trial court's failure to inform her of the right to a court-appointed counsel during her initial appearance constituted good cause to waive the limitation period. Citing *Baldwin, supra,* we agreed.

We held that "[t]he record clearly demonstrates that Davis did not waive her right to counsel." *Id.* at 381, 641 A.2d 941. We held that at her initial appearance, she "unequivocally stated to the court that she could not afford a private attorney and that her income and assets precluded representation by the Office of the Public Defender." *Id.* at 381–82, 641 A.2d 941 (footnote omitted). The trial court nevertheless conducted no inquiry. *Id.* at 383, 641 A.2d 941. We noted that the basis for the Public Defender's decision "remains unexplained, as well as unexamined." *Id.* at 383, 641 A.2d 941. We held that, "[i]f the Public Defender's Office determines it is unable to represent a defendant due to his or her income, the court must conduct its own inquiry as to whether the defendant qualifies for a court-appointed counsel." *Id.* at 380, 641 A.2d 941 (citing Md.Code Ann. (1993 Repl.Vol.) Art. 27A § 6(f), and *Baldwin,* 51 Md.App. at 553, 444 A.2d 1058 (1982)). "The necessity for this independent court evaluation stems from the judiciary's role as the 'ultimate protector' of the rights awarded under the Constitution, including the right to counsel." *Davis,* 100 Md.App. at 380–81, 641 A.2d 941 (quoting *Baldwin,* 51 Md. App. at 552, 444 A.2d 1058).

In a footnote, we stated that one might argue that *Baldwin* was factually distinguishable because Davis's statements in circuit court regarding her desire not to represent herself were equivocal compared to Baldwin's statements. We be-

lieved, however, that such an argument would be "wide-of-the-mark and without substantial merit effectively." *Id.* at 382, 641 A.2d 941. We explained:

It is not possible from a reading of *Baldwin* to say that Baldwin's expression of his desire to have counsel provided at public expense is any more or less clear, as of the time of his initial appearance when the court made its initial decision on that matter, than were Davis's conduct and declarations prior to the expiration of the mandatory motions filing deadline. Davis, too, had applied to the Public Defender for counsel. Her explanatory advice to the court at her initial appearance, on 30 July 1992, clearly revealed that it was her opinion that she could not afford an attorney because such assets as she had were unavailable to her through a combination of the State's conduct in freezing her bank credit line or her inability to borrow against, for unspecified reasons, whatever other assets may have escaped the State's action. It is manifest to us that Davis's announced intention to defend herself at that point in time was borne of her ignorance of the fact that the court must conduct the kind of inquiry that the circuit court in *Baldwin* conducted, and her mistaken belief that she had no options left. Regardless of whether Davis's statements, occurring at the crucial time in her proceedings as they did, fall short of the degree of clarity of expression of Baldwin's much later trial declaration, it is our view that the trial court was sufficiently on notice of Davis's perceived predicament to have required it to perform its duties under *Baldwin.* Any equivocation in Davis's remarks should have been resolved by the court executing a timely and full inquiry into the proper exercise of her Constitutional right to counsel. As Chief Judge Wilner observed in *Baldwin:*

If, because of some unarticulated suspicion that appellant had command over resources that could be devoted to the [re]tention of private counsel, the court was in any way in doubt about the matter of his indigence, it should have heeded the advice we gave in *Laquay v. State,* 16 Md. App. 709, 725, 299 A.2d 527 (1973): "It is suggested that

if there be real uncertainty, it be resolved by providing the assistance of counsel rather than denying it."

*Baldwin,* 51 Md.App. at 555–56, 444 A.2d 1058.

That same spirit is what compels our conclusion here.

*Davis,* 100 Md.App. at 382–83 n. 3, 641 A.2d 941.

Here, the holdings of *Baldwin* and *Davis* compel the conclusion that the trial court erred by not conducting an indigence inquiry when it became aware that appellant was found ineligible for representation by the Public Defender's Office but could not afford private counsel.

The State, however, attempts to distinguish *Baldwin* by arguing that "the foundation upon which that case . . . was built was modified significantly" in 1984, when the Court of Appeals "revamped the M[d.] Rules into the basic structure used today." The State points out that the predecessor to Md. Rule 4–215(a)—Rule 723(b)—and the predecessor to Md. Rule 4–215(b)—Rule 723(c), each specifically *required the trial court* to advise a defendant that if he is financially unable to retain counsel and the Public Defender's office declines to provide representation, the court may appoint counsel.[9]  The

---

9.  Md. Rule 723(b), entitled "Appearance Without Counsel," provided, in pertinent part:

When a defendant appears pursuant to section a of this Rule and is not represented by counsel, the court shall:
* * *
  5. Advise the defendant that he finds he is financially unable to retain the service of private counsel, he should apply to the Public Defender as soon as possible for a determination of his eligibility to have counsel provided for him by the Public Defender;
  6. *Advise the Defendant that if the Public Defender declines to provide representation, the defendant should immediately notify the clerk of the court so that the court can determine whether it should appoint counsel pursuant to Article 27A, section 6(f), of the Maryland Code;*
(Emphasis added).  Rule 723(c), entitled, "Waiver inquiry," provided in pertinent part:

When a defendant indicates a desire or inclination to waive counsel the court may not accept the waiver until it determines, after appropriate questioning on the record in open court, that the defendant possesses the intelligence and capacity to appreciate the consequences of his decision, and fully comprehends:
* * *

State argues that notably absent from Rule 4–215 is any reference to a trial court's duty in Md. Rule 723(b)(6) and (c)(4) to inform the defendant in open court of his right to request court-appointed counsel should the Public Defender's Office decline to represent him. The State argues that "[r]ather than requiring the trial court to inform the defendant orally, the drafters of the Rules mandated that a defendant be informed of these rights, in writing, at the commencement of the adversarial criminal process when the defendant receives his or her charging document." Specifically, Md. Rule 4–202(a)(6)–(7) provides that a charging document should include the following language:

6.  If you want a lawyer but do not have the money to hire one, the Public Defender may provide a lawyer for you. The court clerk will tell you how to contact the Public Defender.

7.  *If you want a lawyer but you cannot get one and the Public Defender will not provide one for you, contact the court clerk as soon as possible.*

(Emphasis added). The State concludes that, "[i]n light of this shift from notification by judge to notification by charging document," the holdings of *Baldwin* and its progeny "be modified and interpreted accordingly."

We disagree with the State's argument for several reasons. First, there is no evidence that in adopting Rule 4–202(a)(6)–(7), the Court of Appeals was shifting the responsibility from informing a defendant of his constitutionally protected right to counsel from an oral advisement from the trial court to a written advisement stated in the midst of a charging document. Our research of the Rules Committee Meeting minutes regarding the changes to the rules in 1984 reveals that there was no discussion regarding the intent or effect of the change wrought by placing in the rules the requirement that an

---

4.  *That if the defendant is found to be financially unable to retain private counsel, the Public Defender or the court would, if the defendant wishes, provide counsel to represent him.*
(Emphasis added).

accused be advised of his right to court-appointed counsel in the charging documents. Second, *Davis*, which affirmed the holding of *Baldwin*, was decided in 1994, ten years after the 1984 rule change. Interestingly, the State does not address this point. Third, we note that the Court of Appeals has adopted a low tolerance for any erosion of a defendant's constitutionally protected right to counsel.

It is hard to imagine, in light of the above, that the Court of Appeals would shift notice of the right to court-appointed counsel from a finding by the trial court to a written provision stated in the midst of a charging document. Although appellant was informed of her right to have court-appointed counsel in her charging documents when she first appeared in District Court (Rec. 4), we do not think that suffices to ensure a defendant his or her constitutional right to counsel.[10]

█ Lastly, the State argues that if we are persuaded that the trial court erred by failing to engage in an independent inquiry as to whether appellant was entitled to appointed counsel, we should not remand for a new trial but order a limited remand under Rule 8–604(d) to allow the trial court to conduct that independent inquiry. We cannot. Because compliance with Rule 4–215 is mandatory and the failure to conduct the proper inquiry, which is necessary to resolve whether an accused is entitled to the right to self-representation, is not considered harmless, reversal is required. *See Johnson v. State*, 355 Md. 420, 449–51, 735 A.2d 1003 (1999) (holding that a new trial rather than a limited remand is

---

10. When appellant first appeared in district court she was given a "Notice of Advice of Right to Counsel" form. On that form, she placed her initials next to the following three statements:

   6. If you want a lawyer but do not have the money to hire one, the Public Defender may provide a lawyer for you. The court clerk will tell you how to contact the Public Defender.

   7. If you want a lawyer but you cannot get one and the Public Defender will not provide one for you, contact the court clerk as soon as possible.

   8. DO NOT WAIT UNTIL THE DATE OF YOUR TRIAL TO GET A LAWYER.

(Emphasis in original). She also signed and dated the form stating that she had read or had read to her the contents of the form.

required when a trial court fails to conduct a proper Md. Rule 4–215 waiver because the right to counsel is a fundamental constitutional protection).

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED AND CASE REMANDED FOR NEW TRIAL.**

**COSTS TO BE PAID BY BALTIMORE COUNTY.**