11 A.3d 811

STATE of Maryland

v.

Constance WALKER.

No. 48, Sept. Term, 2010.

Court of Appeals of Maryland.

Jan. 21, 2011.

Ryan R. Dietrich, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for petitioner.

Martha Gillespie, Asst. Public Defender (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

HARRELL, J.

We are approaching an infinite number of cases applying and/or interpreting Maryland Rule 4–215 (or its predecessors) governing waiver of counsel. Although it was observed early-on, regarding a predecessor version of Rule 4–215, that "[t]he wording of the Rule is so simple and plain that no elaboration thereof is necessary or desirable .... [t]he Rule means just what it says....[,]" *Williams v. State,* 220 Md. 180, 181, 151 A.2d 721, 721 (1959), the plethora of cases that we and the Court of Special Appeals have decided subsequently interpreting the wording and application of the Rule render those earlier words a failed prophecy. *See Garner v. State,* 183 Md.App. 122, 127, 960 A.2d 649, 651 (2008), *aff'd,* 414 Md. 372, 995 A.2d 694 (2010) ("For a judge to traverse Rule 4–215 is to walk through a minefield. A miracle might bring one across unscathed. For mere mortals, the course will seldom be survived."). In somewhat of a twist, today, we visit Rule 4–215, not to construe or interpret the text of the rule so much, but rather to compare it to the text of its predecessor in order to determine what, if any, effect that language—absent from the current Rule—has on the continuing efficacy of our reasoning in *Thompson v. State,* 284 Md. 113, 394 A.2d 1190 (1978).

The State appeals here from the judgment of the Court of Special Appeals reversing Constance Walker's conviction in the Circuit Court for Baltimore County for second-degree assault. The intermediate appellate court held—relying on *Thompson, supra*—that the trial court erred in determining

that Walker waived her right to counsel under Md. Rule 4–215(b) when, after she explained that she was denied representation by the Office of the Public Defender ("OPD"), but could not afford private counsel, the trial court failed to inquire further as to whether she may be entitled to court-appointed counsel by reason of indigency.

The State argues that *Thompson's* mandate—that a trial court, upon learning that a defendant was denied representation by the OPD (presumably on a lack of indigency basis), should conduct an independent indigency inquiry to determine if the defendant is eligible for court-appointed counsel—was predicated on the terms of former Maryland Rule 723, which provided expressly that the trial court should "[a]dvise the Defendant that if the Public Defender declines to provide representation, the defendant should immediately notify the clerk of the court so that the court can determine whether it should appoint counsel. . . ." Former Md. Rule 723(b)(6). Because that language is absent from the current version of the Rule (4–215) (which was in force at the operative time in Walker's case), and Md. Rule 4–202 requires currently (as it did at the operative time in Walker's case) that the charging document in a circuit court case inform the defendant in a criminal case that "[i]f you want a lawyer but you cannot get one and the Public Defender will not provide one for you, contact the court clerk as soon as possible," Md. Rule 4–202(a)(7), the State argues that "because Walker failed to request that the trial court conduct an independent inquiry as to whether or not she was in fact indigent (and thus entitled to court appointed counsel), the Court of Special Appeals erred in finding that the trial court committed reversible error because it did not conduct such an inquiry." We hold, as explained more fully *infra*, that *Thompson's* compelled indigency inquiry is not predicated upon when (or how) the defendant finds out that court-appointed counsel is a constitutional entitlement for him or her (*i.e.* at trial, as required under Former Md. Rule 723(b)(6), or in the charging document, as the State claims is required under current Md. Rule

4–202(a)(7) [1]), and, thus, the rule changes effectuated since *Thompson* do not affect the present application of *Thompson.* Accordingly, we affirm the Court of Special Appeals.

## FACTS AND PROCEEDINGS

We adopt the Court of Special Appeals's succinct rendition of the contextual and specifically relevant facts:

Viewing the evidence in the light most favorable to the State, it was established that on March 17, 2008, [Walker] repeatedly hit Tahlene Shipley and bit her on the cheek when the two became involved in a disagreement. The disagreement concerned money that [Walker] allegedly owed for construction work performed by Ms. Shipley's husband. [Walker] was charged that same day with second-degree assault.

On May 20, 2008, [Walker] appeared in District Court and prayed a jury trial. Her case was transferred to the Circuit Court and trial was scheduled for June 6, 2008. On that date, [Walker] appeared without counsel. The case was postponed because no jury was available. Trial was re-scheduled for July 16. On that date, [Walker] again appeared for trial without counsel and the following colloquy occurred:

THE COURT: Ma'am, have you received a copy of the charging document in this case?

[WALKER]: Yes.

THE COURT: Do you understand you have a right to be represented by an attorney at every stage of these proceedings?

[WALKER]: Yes.

THE COURT: Do you also understand that you've been charged with second-degree assault? That carries a possible penalty of ten years and/or a $ 2500 fine.

[WALKER]: Yes.

THE COURT: An attorney can be of important help to you in determining whether or not there may be defenses

---

1. *But see infra* at 18–19.

to the charges or circumstances in mitigation thereof, and in preparing for and representing you at the trial of these charges. Even if you wanted to plead guilty, an attorney could be of substantial help in developing and presenting information which could affect the sentence or other disposition. If you cannot afford to hire an attorney, you could apply to the Public Defender's [O]ffice. It's a little late to do that, unless you're granted a postponement by the administrative judge. And you've already been notified by other judges that if you appeared for trial without an attorney, that could be construed as a waiver of your right to an attorney by showing up without one or refusing to make a timely application. Do you understand that?

[WALKER]: Yes.

THE COURT: Have you applied to the Public Defender's Office?

[WALKER]: Yes.

THE COURT: When did you apply to them?

[WALKER]: Right after the incident. It was within a few days of the incident, but they said I wasn't eligible.

THE COURT: So you applied back in March of this year?

[WALKER]: Uh-huh. March or first week in April or end of March.

THE COURT: Have you sought the services of a private attorney?

[WALKER]: Yes.

THE COURT: Do you want to proceed without an attorney at this time?

[WALKER]: Yes.

THE COURT: Okay. You don't want to ask for a postponement to get one?

[WALKER]: Can't afford it.[2]

---

**2.** The only reasonable interpretation of this statement, we think, is that Walker was claiming that she could not afford to engage private counsel, *i.e.,* was indigent.

THE COURT: Okay.

[Walker] proceeded to trial *pro se.* As related above, she was ultimately convicted of second-degree assault and the court imposed a sentence of incarceration.

*Walker,* 190 Md.App. at 579–82, 989 A.2d at 786–87.

Walker appealed timely to the Court of Special Appeals. The Court of Special Appeals, in a reported opinion, *Walker v. State,* 190 Md.App. 577, 989 A.2d 785 (2010), reversed Walker's conviction, explaining:

[T]here is no evidence that in adopting Rule 4–202(a)(6)–(7) ["Charging document—Content"], the Court of Appeals was shifting the responsibility from informing a defendant of his constitutionally protected right to counsel from an oral advisement from the trial court to a written advisement stated in the midst of a charging document. Our research of the Rules Committee Meeting minutes regarding the changes to the rules in 1984 reveals that there was no discussion regarding the intent or effect of the change wrought by placing in the rules the requirement that an accused be advised of his right to court-appointed counsel in the charging documents. Second, *Davis* [*v. State,* 100 Md. App. 369, 641 A.2d 941 (1994) ], which affirmed the holding of *Baldwin* [*v. State,* 51 Md.App. 538, 444 A.2d 1058 (1982) ], was decided in 1994, ten years after the 1984 rule change. Interestingly, the State does not address this point. Third, we note that the Court of Appeals has adopted a low tolerance for any erosion of a defendant's constitutionally protected right to counsel.

It is hard to imagine, in light of the above, that the Court of Appeals would shift notice of the right to court-appointed counsel from a finding by the trial court to a written provision stated in the midst of a charging document. Although appellant was informed of her right to have court-appointed counsel in her charging documents when she first appeared in District Court, we do not think that suffices to ensure a defendant his or her constitutional right to counsel.

*Walker,* 190 Md.App. at 593–94, 989 A.2d at 794. The State filed timely a Petition for Writ of Certiorari, which we granted, *State v. Walker,* 415 Md. 38, 997 A.2d 789 (2010), to consider whether

> the lower court improperly expand[ed] this Court's limited holding in *Thompson v. State,* 284 Md. 113 [394 A.2d 1190] (1978), when it found that a trial court must conduct an independent indigence inquiry even though a defendant has neither (1) applied to the clerk of the court prior to trial for appointed counsel as set forth in Rule 4–202(a) nor (2) requested at trial that the trial court appoint counsel.

## ANALYSIS

### I. Standard of Review

At bottom, the State asserts that the Court of Special Appeals "improperly expanded this Court's limited holding in *Thompson....*" It is well settled that where a case "involves an interpretation and application of Maryland ... case law, our Court must determine whether the lower court's conclusions are 'legally correct' under a [non-deferential] standard of review." *Schisler v. State,* 394 Md. 519, 535, 907 A.2d 175, 184 (2006); *see Ali v. CIT Tech. Fin. Servs., Inc.,* 416 Md. 249, 257, 6 A.3d 890, 894 (2010). Further, to the extent that the State argues that the current Maryland Rules require a result different from that reached by the Court of Special Appeals, we note that "[b]ecause our interpretation of ... the Maryland Rules [is] appropriately classified as [a] question[ ] of law, we review the issues [without deference to the lower courts' decisions] to determine if the trial court was legally correct in its rulings on these matters." *Davis v. Slater,* 383 Md. 599, 604, 861 A.2d 78, 80–81 (2004); *see Owens v. State,* 399 Md. 388, 402–03, 924 A.2d 1072, 1080 (2007).

### II. Analysis

Judge Irving Levine, writing in 1975 for this Court in *State v. Renshaw,* 276 Md. 259, 347 A.2d 219 (1975), summarized

aptly the right of a defendant in a criminal case to the assistance of counsel:

The Sixth Amendment to the United States Constitution provides that '[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence.' The Due Process Clause of the Fourteenth Amendment guarantees the same right to the assistance of counsel, including the right to the appointment of counsel in the case of the indigent defendant, in state criminal prosecutions....

Central to the cases dealing with the right to counsel is the recognition that the assistance of a lawyer is essential to assure a fair trial....

Consequently, because '[e]ssential fairness is lacking if an accused cannot put his case effectively in court,' ... and because it is unlikely that an accused will be able to present his case effectively without the assistance of counsel, a conviction cannot be allowed to stand where the accused is not represented at trial by counsel unless it be determined that there was an intelligent and competent waiver by the accused.... To assure protection of so fundamental a right, courts indulge every reasonable presumption against waiver, ... and do not permit waiver to be presumed from a silent record.... It must appear affirmatively on the record that the accused was offered counsel but intelligently and understandingly rejected the offer.

As the Court of Special Appeals explained in its opinion in the present case:

Pursuant to Maryland law, two options are available to defendants in criminal cases who are financially unable to retain their own counsel. The defendant may seek representation from the Public Defender's Office. Section 16–210(a) of the Criminal Procedure Article of the Maryland Code (2001, 2008 Repl.Vol.) provides that "[a]n individual may apply for services of the Office as an indigent individual, if the individual states in writing under oath or affirmation that the individual, without undue financial hardship,

cannot provide the full payment of an attorney[.]" Eligibility for Office of the Public Defender's services shall be determined by the need of the applicant, which "shall be measured according to the financial ability of the applicant to engage and compensate a competent private attorney and to provide all other necessary expenses of representation." Section 16–210(b)(1)–(2). The statute lists six factors in determining an applicant's financial ability: (1) the nature, extent, and liquidity of assets; (2) the disposable net income of the applicant; (3) the nature of the offense; (4) the length and complexity of the proceedings; (5) the effort and skill required to gather pertinent information; and (6) any other foreseeable expense. Section 16–210(b)(3)(i)–(vi).

Additionally, defendants may seek representation from a court-appointed attorney. C.P. § 16–213 provides that "[t]his subtitle does not prohibit the appointment of an attorney to represent an indigent individual by the District Court, a circuit court, or the Court of Special Appeals if . . . the Office declines to provide representation to an indigent individual entitled to representation under this subtitle." *Walker*, 190 Md.App. at 585, 989 A.2d at 789. As tools with which to implement and protect the right to counsel—deemed a "fundamental constitutional protection," *Johnson v. State*, 355 Md. 420, 442, 735 A.2d 1003, 1015 (1999)—this Court adopted Rule 4–215 and its immediate predecessor, Rule 723. *See Johnson*, 355 Md. at 444, 735 A.2d at 1016 ("Maryland Rule 4–215 . . . implements the constitutional mandates for waiver of counsel. . . ."); *Snead v. State*, 286 Md. 122, 130, 406 A.2d 98, 102 (1979) ("Rule 723 of the Maryland Rules of Procedure implements the constitutional mandates for waiver of counsel. . . .").

## A. Looking to the Past

Former Md. Rule 723, entitled "Appearance—Provision for or Waiver of Counsel," adopted by this Court on 31 January 1977, became effective on 1 July 1977.[3] Section (b) of Rule

---

**3.** There were provisions in the Maryland Rules relating to appointment and waiver of counsel prior to 1977. *See Thompson v. State*, 284 Md.

723, entitled "Appearance Without Counsel," provided, in pertinent part, that:

When a defendant appears . . . and is not represented by counsel, the court shall: . . . 6. Advise the defendant that if the Public Defender declines to provide representation, the defendant should immediately notify the clerk of the court so that the court can determine whether it should appoint counsel pursuant to Article 27A, section 6(f), of the Maryland Code. . . .[4]

Further, Section (c) of the Rule, entitled "Waiver Inquiry," provided, in pertinent part, that:

"When a defendant indicates a desire or inclination to waive counsel, the court may not accept the waiver until it determines, after appropriate questioning on the record in open court, that the defendant possesses the intelligence and capacity to appreciate the consequences of his decision, and fully comprehends: . . . 4. That if the defendant is found to be financially unable to retain private counsel, the Public Defender or the court would, if the defendant wishes, provide counsel to represent him."

In *Thompson*, 284 Md. at 114, 394 A.2d at 1191, we discussed the duties imposed on a trial court, when informed that the defendant in a criminal case has been denied representation by the OPD for lack of indigency, before that court may determine that the defendant waived his or her constitutional right to counsel.[5] The Court explained that, considering Rule

---

113, 123 n. 3, 394 A.2d 1190, 1195 n. 3 (1978) ("Former Rule 719, and its precursor Rule . . . included less elaborate provisions for the appointment and waiver of counsel."). For purposes of the present case, however, former Rule 723 and its comparison to current Rule 4–215 are most relevant to our analysis of the on-going application of *Thompson*.

4. On October 1, 2008, Article 27A was recodified as Title 16 of the Criminal Procedure Article. Because the events at issue in this case occurred on or before 6 June 2008, we refer to the provisions of Article 27A, the version of the statute in effect at the time.

5. Because we are concerned only with *Thompson's* legal analysis, and do not attempt to analogize or distinguish the facts in the present case

723(b)(6) required the trial court to "[a]dvise the defendant that if the Public Defender declines to provide representation, the defendant should immediately notify the clerk of the court *so that the court can determine whether it should appoint counsel*" and Rule 723(c) required the trial court to be assured that the defendant "fully comprehends" that if he or she "is found financially unable to retain private counsel, the Public Defender or the court would, if the defendant wishes, provide counsel to represent him," "there is the clear duty imposed on the court, in order to decide whether it should appoint counsel, upon the Public Defender declining to do so, to make its own independent determination whether a defendant is indigent and otherwise eligible to have counsel provided." *Thompson,* 284 Md. at 128–29, 394 A.2d at 1198 (emphasis added); *see Thompson,* 284 Md. at 130, 394 A.2d at 1199 ("[I]f Thompson were indigent and otherwise entitled to assistance of counsel, the law, implemented by statute and our rules of procedure, required the court to appoint an attorney when the Office of the Public Defender declined to provide counsel. The failure of the court to determine whether Thompson was eligible to have counsel provided was reversible error.").

## B. Looking at the Present

A Rules Order, dated 6 April 1984, (among other things) rescinded all of the then extant Rules of Chapter 700 of the Rules of Procedure and substituted new Rules in their place. Of particular import to this case are Rules 4–215 and 4–202. Rule 4–215 provides currently that the right to counsel may be deemed waived under (b), if, pursuant to (a), the judge:

(1) Make[s] certain that the defendant has received a copy of the charging document containing notice as to the right to counsel.

to those in *Thompson,* we do not recite the laborious facts—which detailed elaborately colloquies between Thompson and the trial court from five different pre-trial hearings and from trial—of that case.

(2) Inform[s] the defendant of the right to counsel and of the importance of assistance of counsel.

(3) Advise[s] the defendant of the nature of the charges in the charging document, and the allowable penalties, including mandatory penalties, if any.

\* \* \*

(5) If the trial is to be conducted on a subsequent date, advise[s] the defendant that if the defendant appears for trial without counsel, the court could determine that the defendant waived counsel and proceed to trial with the defendant unrepresented by counsel.

Further, pursuant to (b), "the court may not accept the waiver until after an examination of the defendant on the record conducted by the court, . . . the court determines and announces on the record that the defendant is knowingly and voluntarily waiving the right to counsel." Importantly, Rule 4–215—Rule 723's successor—no longer requires the trial court to "[a]dvise the Defendant that if the Public Defender declines to provide representation, the defendant should immediately notify the clerk of the court so that the court can determine whether it should appoint counsel . . . ."; nor must it, before accepting a defendant's waiver, determine that the defendant comprehends "[t]hat if the defendant is found to be financially unable to retain private counsel, the Public Defender or the court would, if the defendant wishes, provide counsel to represent him." *See* Letter from Criminal Rules Subcommittee to Rules Committee Members (2 June 1982) [hereinafter "Criminal Rules Subcommittee Letter"] ("The other laundry lists of actions to be taken by the court have been eliminated.").

The same Rules Order substituted Rule 4–202 ("Charging document—Content") for its predecessor, former Rule 711. Of import to the present case, Rule 4–202(a)(7) added language not found previously in Rule 711; namely, the requirement that the charging document in a circuit court criminal case inform a defendant that "[i]f you want a lawyer but you cannot get one and the Public Defender will not provide one

for you, contact the court clerk as soon as possible." [6] The Rules Committee's notes to the pertinent Rules Order reveal that "[t]he committee [wa]s aware that the consolidated rule eliminates several specific requirements for notice or advice to the defendant of his rights in regard to counsel. It was the intent of this rule to leave the principal enumeration of the advice concerning counsel to the charging document content rule...." Criminal Rules Subcommittee Letter; *see* Eighty–Seventh Report of the Standing Committee on Rules of Practice and Procedure, Vol. 10 Md. Reg. (9 December 1983) [hereinafter "Standing Committee Report"] ("Under section (a) of [4–202] the notice to the defendant currently contained on District Court charging documents is made applicable to all charging documents. This printed notice is later relied upon to simplify the waiver inquiry that must be conducted by the court."). In moving the requisite waiver advisements from open court to the charging document, the "language of the notice [wa]s modified so as to be more intelligible to the persons to whom it is directed." Standing Committee Report.

### C. Contentions in the Present Case[7]

The State argues that

---

6. Md. Rule 4–213(a)(2) mandates that a judicial officer "require the defendant to read the notice to defendant required to be printed on the charging documents in accordance with Rule 4–202(a), or shall read the notice to a defendant who is unable for any reason to do so."

7. The Rules Committee's notes also seem to prophecize the exact dispute presented in the present case. One member of the Committee noted that under current rule 723, when a defendant appears in court without a lawyer but is not waiving his right to counsel, the court must advise the defendant of several specified matters. If the defendant thereafter appears at trial without counsel, the court can find a waiver. If the revised rule does not provide for all the requisite advi[c]e to be given when the defendant first appears without counsel, the court will not able to later find a waiver. Standing Committee on Rules of Practice and Procedure Meeting Minutes (10/11 September 1982). The committee member seems to have channeled Walker's position that, because the court does not inform the defendant, upon learning that he or she has been denied representation by the OPD, that the court itself may appoint counsel, a waiver cannot be knowing and voluntary. Another committee member

[i]n light of this shift from notification by judge to notification by charging document (and judicial officer), it is evident that, to the extent the holdings in *Thompson* (as well as *Baldwin* and its progeny) relied on the specific language in Rule 723(b)(6) and (c)(4), those holdings should be modified and interpreted accordingly.

The "holding" in Walker's case, as the State would have it, should be that when "a defendant appears at trial and fails to request that the trial court determine whether he or she is indigent despite rejection by the [OPD], that defendant must be deemed to have waived the exercise of that right," and that "any obligation to conduct an independent [indigency examination] ... must be premised on a defendant's act of affirmatively requesting that the court determine whether they are entitled to appoint counsel." Such a holding, the State contends, "has the effect of increasing judicial efficiency," presumably including that placing the burden on a defendant to request an indigency inquiry would make a trial court's waiver-of-counsel inquiry less laborious.

Walker asserts that the trial court cannot deem a defendant to have waived his or her right to court-appointed counsel simply by assuring that the defendant received the charging document and subsequently failing to ask expressly for an indigency inquiry by the court. This is so because 4–202(a)(7) informs the defendant merely that "[i]f you want a lawyer but you cannot get one and the Public Defender will not provide one for you, contact the court clerk as soon as possible." Nothing in (a)(7) informs a defendant of his or her right to court-appointed counsel, and, therefore, a waiver cannot be "knowing[ ] and voluntar[y]," as required by 4–215(b).

█ We subscribe to Walker's understanding of the trial court's obligation regarding undertaking an independent indi-

---

seemed to express the position that the State proffers in the present case, "point[ing] out that all these specific advisory notices will, pursuant to Rule 4–202, be included in the charging document. Under Rule [4–215](a) the judge must simply determine that the defendant has received the charging document and understands the notices contained in it." *Id.*

**604**

gency inquiry under the current Maryland Rules, statutory, and constitutional scheme. Since at least 1963, when the Supreme Court decided *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the Sixth Amendment guarantee of counsel has been deemed a fundamental right, such that denial of counsel in state courts to indigent defendants in criminal cases is a violation of the Due Process Clause of the Fourteenth Amendment.[8] Of course, not every defendant may be entitled to representation by the OPD or court-appointed counsel. *See Fairbanks v. State*, 331 Md. 482, 489, 629 A.2d 63, 66 (1993) ("[T]he Supreme Court decided in *Gideon* that *indigent* defendants in state felony prosecutions are entitled to appointment of counsel.") (emphasis added). It was *Gideon* that supplied the impetus to the General Assembly's efforts, in 1971, to "furnish indigents with counsel in criminal proceedings." *Webster v. State*, 299 Md. 581, 603, 474 A.2d 1305, 1316 (1984). Accordingly, in enacting Article 27A (entitled "Public Defender"), it became the "policy of the State of Maryland to provide for the realization of the constitutional guarantees of counsel in the representation of indigents [9] . . . in criminal and juvenile proceedings within the State. . . ." Art. 27A, § 1.

Thus, in Maryland (and elsewhere), indigent defendants enjoy a constitutional and statutory entitlement to appointed representation—either by the OPD, panel attorneys, or by court-appointed counsel—in criminal

---

**8.** The Maryland Declaration of Rights provides that "in all criminal prosecutions, every man hath a right . . . to be allowed counsel. . . ." MD. DECL. OF RTS., Art. 21. We construe Article 21 as being in *pari materia* with the Sixth Amendment. *See Johnson v. State*, 355 Md. 420, 442, 735 A.2d 1003, 1015 (1999).

**9.** Article 27A defined "indigent" as:

Any person taken into custody or charged with a serious crime as herein defined under the laws of the State of Maryland or the laws and ordinances of any county, municipality, or Baltimore City, who under oath or affirmation subscribes and states in writing that he is financially unable, without undue hardship, to provide for the full payment of an attorney and all other necessary expenses of legal representation.

Art. 27A, § 2(f).

prosecutions.[10] How is the trial court to know if a defendant is indigent without making that determination itself; may it rely simply on the OPD's determination that a defendant is not sufficiently "indigent?" We answered this question in *Office of the Public Defender v. State,* 413 Md. 411, 993 A.2d 55 (2010), where we stated that because of the "clear oversight and corrective role for the courts in the indigency determination and appointed-counsel process," "[t]he OPD's initial determination of indigency is not final [necessarily], however, because 'in obvious recognition of the fact that the whole system has Constitutional underpinnings and that the courts must, of necessity, be the ultimate protector of those underpinnings....'" *OPD,* 413 Md. at 432, 993 A.2d at 67 (quoting *Baldwin,* 51 Md.App. at 551, 444 A.2d at 1066). As part of its waiver inquiry, a trial court no longer must advise a defendant who has been declined representation by the OPD that he or she "should immediately notify the clerk of the court so that the court can determine whether it should appoint counsel," as former Rule 723(c)(4) provided. Yet, regardless of when or how a defendant in a criminal case becomes aware of his or her potential right to court-appointed counsel (assuming he or she was declined representation by the OPD for non-indigency)—whether it is at trial, as required under former Md. Rule 723(b)(6), or in the charging document, as is provided for under current Md. Rule 4–202(a)(7)—we see no other way to fulfill the courts' constitutionally-mandated duty to provide representation to indigents unable to obtain representation without a trial court, itself and independently, conducting an indigency inquiry when triggered by a defendant's ongoing claim of inability to afford privately-retained counsel.[11]

---

**10.** It is possible that the *Thompson* Court, implicitly bowing to the doctrine of constitutional avoidance, constructed its holding upon the prevailing regulatory scheme, and not on a constitutional foundation. Because of the aforementioned changes to the relevant Rules, we base our holding in the present case on constitutional and statutory requirements.

**11.** This conclusion is in line with language from both the majority and dissenting opinions in *Office of the Public Defender v. State,* 413 Md.

**606** 

 Falling under its own weight is the State's contention that, made aware of the right to court-appointed counsel by reading the charging document and yet failing to request affirmatively a new indigency inquiry, a defendant waives his or her right to court-appointed counsel. Notwithstanding the changes to the relevant Rules of Procedure, at bottom, current Rule 4–215(b) provides, that, before accepting a waiver of counsel, the court must "determine[ ] and announce[ ] on the record that the defendant is knowingly and voluntarily waiving the right to counsel." A defendant cannot "knowingly and voluntarily" waive the potential right to court-appointed counsel if he or she does not know of that right. As stated *supra,* "it was the intent of this [new] rule to leave the principal enumeration of the advice concerning counsel to the charging document content rule...." Criminal Rules Subcommittee Letter. The "charging document rule"—4–202(a)—merely informs a defendant that if "the Public Defender will not provide [representation] for you, contact the court clerk as soon as possible." For what purpose should the defendant contact the court clerk? While one who understands the history of the implicated Rules may infer reasonably that the Rules Committee, in attempting to make the rules "simpler" and "more intelligible," intended this to mean that a defendant should contact the office of the clerk of the court to inquire about court-appointed counsel, this direction notably did not com-

411, 993 A.2d 55 (2010) (*"OPD"*). The majority in *OPD* stated that "[a]lthough Art. 27A, § 6(f), does not specify either the procedure or the standard to be employed by the court, under [*Thompson* ], the court must 'make its own independent determination whether a defendant is indigent and otherwise eligible to have counsel provided....' " *OPD,* 413 Md. at 432, 993 A.2d at 68 (quoting *Thompson,* 284 Md. at 129, 394 A.2d at 1198). Further, "we h[e]ld that ... where the local OPD declines representation to a defendant erroneously, ... and where a court finds, *upon its subsequent mandatory independent review ....*" *OPD,* 413 Md. at 434, 993 A.2d at 69. Chief Judge Bell, in his dissent, citing *Thompson,* stated that "the trial court's duty is to determine whether a defendant is indigent and, if so, to appoint counsel." *OPD,* 413 Md. at 441, 993 A.2d at 74 (Bell, C.J., dissenting).

plete the trip from Highway 723 to Route 4–202.[12] Because nowhere in the charging document does a defendant become aware of his or her right (assuming indigency and despite denial of representation from the OPD) to court-appointed counsel, a defendant cannot "knowingly and voluntarily" waive that right based on reading the charging document alone.[13]

In conclusion, we hold that, under the prevailing constitutional and statutory framework, it is incumbent upon a trial court, upon learning that a defendant in a criminal case has been denied representation by the OPD and who maintains nonetheless an inability to afford to retain private counsel, to conduct its own independent indigency inquiry, in accordance with the statutory criteria,[14] to determine if the defendant is

---

**12.** A defendant reading such language could conclude reasonably that a call to the clerk of the court is required in order to inform the court that the defendant will be self-represented, or perhaps to request a postponement. Whatever alternative reasonable interpretations to which the language in Md. Rule 4–202(a)(7) is susceptible, we think that the language in (a)(7), standing alone, does not inform adequately a defendant that, if declined representation from the OPD, the trial court, nevertheless, could appoint counsel if persuaded that, under the statutory criteria, the defendant was indigent, the OPD's decision notwithstanding.

**13.** The Criminal Rules Subcommittee, in dealing with the changes to 4–202 and 4–215, noted that "[t]he effectiveness of a waiver of counsel is going to be determined by the meaningful communications between the *defendant and the court* as that communication is reflected in the record." We agree. Allowing the trial court to base a finding, regarding the constitutionally-protected right to counsel, on an advisement that is not even stated expressly in the charging document would run afoul of this principle.

**14.** As to the format the inquiry should take, we approve of the language in *Baldwin v. State,* 51 Md.App. 538, 550, 553, 444 A.2d 1058, 1066, 1067 (1982)—cited with approval by this Court in *OPD,* 413 Md. at 432, 993 A.2d at 68, and *Workman v. State,* 413 Md. 475, 480 n. 9, 993 A.2d 94, 97 n. 9 (2010)—where the intermediate appellate court stated that the trial court should consider "any information offered by the parties which may reasonably bear upon the defendant's ability to afford private counsel," and that "[t]he real key to determining indigence (eligibility) is stated in § 7(a)" [now Maryland Code (2008 Repl. Vol.), Criminal Procedure Article, § 16–210(b)]. And, as noted in *OPD,* 413 Md. at 435, 993 A.2d at 69–70, because the OPD is an executive branch agency, *see* Criminal Procedure § 16–202, "where the local OPD rejects representation based on its own consideration of the indigency criteria provided by [the statutes], its determination is entitled to deference, and

entitled to court-appointed counsel.[15] It is only when a trial court undertakes this inquiry that it fulfills and discharges its duty as the "ultimate protector" of the Sixth Amendment right to counsel. *OPD*, 413 Md. at 434, 993 A.2d at 69. In the present case, after Walker informed the trial court that she was denied representation by the OPD, the trial court asked Walker merely if she wanted to request a postponement to obtain counsel, to which Walker responded that she "[c]an't afford it." Because the trial court conducted no further inquiry into whether Walker was "indigent," such that she would be eligible for court-appointed counsel, it committed reversible error.[16] Accordingly, we affirm the judgment of the Court of Special Appeals in reversing Walker's conviction for second-degree assault.

### D. The Remedy

We disagree with the State's contention that a limited remand is the proper remedy. Pursuant to Md. Rule 8–604, an appellate court may "remand the action to a lower court" if "the Court concludes that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment, or that justice will be served by permitting further proceedings...." Md. Rule 8–604(a)(5), (d). While "[o]ur jurisprudence is replete with examples where a limited re-

---

the court will interfere only when that decision is arbitrary or capricious."

15. We recognize that the failure of a defendant to be classified requisitely as "indigent" is only one reason that the OPD may deny representation. We intend our holding to apply only to those situations in which the OPD denied representation based on a lack of indigency determination and the defendant maintains nonetheless to the trial judge that he or she cannot afford to engage private counsel.

16. Because the Circuit Court determined that Walker waived her right to counsel without the benefit of our decision in *OPD*, *supra*, which was decided later, the trial court may have assumed it had no authority to appoint an attorney from the OPD for Walker if it determined that the OPD assessed improperly her indigency. That case, however, did not foreclose the trial court from appointing a panel attorney if a proper inquiry revealed indigency. *See* Md.Code, Criminal Procedure Art., § 16–208.

mand is proper," *Montgomery Mut. Ins. Co. v. Chesson,* 399 Md. 314, 334, 923 A.2d 939, 950 (2007), the limited remand remedy "is n[ot] an 'antidote' for the errors ... committed during [a] trial...." *Southern v. State,* 371 Md. 93, 104, 807 A.2d 13, 19 (2002); *see Southern,* 371 Md. at 107, 807 A.2d at 21 (noting that a limited remand may give the State "a second bite at the apple").

We are not aware of a case from this Court in which we ordered a limited remand in a case presenting similar circumstances, *i.e.,* where a trial court erroneously or prematurely finds a waiver of counsel. *See, e.g., Richardson v. State,* 381 Md. 348, 365, 849 A.2d 487, 497 (2004); *Johnson v. State,* 355 Md. 420, 451, 735 A.2d 1003, 1020 (1999); *Moore v. State,* 331 Md. 179, 626 A.2d 968 (1993); *Maus v. State,* 311 Md. 85, 532 A.2d 1066 (1987); *Thompson, supra. Mitchell v. State,* 337 Md. 509, 654 A.2d 1309 (1995), is instructive. We framed our analysis as follows:

> If the necessary inquiry under Rule 4–215(d) was subsidiary to the trial or in no way affected the trial, it could be accomplished by a hearing on remand; if the inquiry was not subsidiary, however, a new trial must be ordered. The key to determining the propriety of the limited remand is whether the required inquiry was so intertwined with the trial that a limited remand could cause the defendant to suffer great prejudice. The controlling factor is not, as the intermediate appellate court stated, whether the error occurred during the trial; it is whether the error adversely affected the defendant's right to a fair trial.[17]

*Mitchell,* 337 Md. at 517, 654 A.2d at 1313 (internal citations omitted). In holding that a limited remand was not the proper remedy for the 4–215 violation, we noted:

---

**17.** *But see Williams v. State,* 394 Md. 98, 125, 904 A.2d 534, 550 (2006) (citing *Lipinski v. State,* 333 Md. 582, 636 A.2d 994 (1994), for the proposition that "although limited remand is not an appropriate disposition in a criminal case when the error at issue occurred during the trial itself, it is appropriate if the error occurred during a proceeding collateral to the trial itself").

Limited remand cannot be used to correct procedural defects at the trial level when the procedure involved is so intertwined with the defendant's constitutional right to counsel that a limited remand would cause unfair prejudice. Failure to conduct the Rule [4–215](d) inquiry at the proper time, therefore, mandates a new trial. *The exact circumstances in the instant case under which the original inquiry should have occurred cannot be recreated, and we cannot require the defendant to meet that burden.* The interests of justice simply would not be served by ordering a limited remand in this case.[18]

*Mitchell,* 337 Md. at 518, 654 A.2d at 1313 (emphasis added). The concerns we expressed in *Mitchell* apply to the present case with equal force. That is, a limited remand for the trial court to conduct an indigency inquiry would require Walker to reconstruct her financial situation from early 2008, the ability of which would depend on Walker's record-keeping efforts during the pendency of the litigation. While her financial state in 2008 was "static," it may not be readily ascertainable. We cannot say whether this would impose a great burden on Walker, but it could conceivably, and, therefore, we similarly "cannot require [her] to meet that burden." Accordingly, because "the error adversely affected the defendant's right to a fair trial," *Mitchell, supra,* we hold that a limited remand would not be proper in the present case.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY BALTIMORE COUNTY.**

---

**18.** Allowing for a limited remand and giving the State a second bite at the apple would undermine the accepted notion that Rule 4–215 requires "strict adherence." *See* Paolo Pasicolan, *Maryland's Rule on Waiver of Counsel by Inaction: Making the Perfect the Enemy of the Good,* 64 Md. L.Rev. 1376, 1393–94 (2005) ("[R]eviewing courts reverse waiver determinations, not because of substantive injustice, but because the trial court departed from the prescribed form of the waiver procedure.").